## Gabbard v. Commonwealth.

(Decided May 29 1913.)

### Appeal from Breathit Circuit Court.

1. Homicide— Evidence— Self-Defense—Uncommunicated Threats. —Evidence of uncommunicated threats by deceased against accused is admissible to show the state of mind of the deceased, at the time of homicide, and also to show who was the aggressor.

2. Homicide—Appeal—Harmless Error.—Where it appears that evidence of uncommunicated threats would throw light upon the question of the state of mind of the deceasd, or who was the

aggressor, at the time of the homicide, it is error to exclude such evidence. But, where such evidence is cumulative and the record shows the accused to be the aggressor and that he has had a fair trial, no reversal should be ordered because of the exclusion of such evidence.

COPE & COPE and A. H. PATTON for appellant.

JAMES GARNETT, Attorney General, OVERTON S. HOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

The grand jury of Breathitt County indicted Pierce Gabbard, charging him with the wilful murder of Ike Gabbard. He was tried, found guilty, and his punishment fixed at confinement in the penitentiary for life. From the judgment of conviction he appeals and complains that the verdict is against the weight of the evidence and that the court erred in the admission of incompetent evidence, in the rejection of competent evidence and in his instructions to the jury.

The deceased lived, and ran a country store, about eight miles from Jackson, the county seat of Breathitt County, and was a neighbor and double first cousin of the accused. On September 23, 1912, both the accused and deceased had been drinking and were, to some extent, under the influence of liquor. Pierce Gabbard, on that day, came to the store ostensibly to pay an account he owed decedent. While he was in front of the store and deceased was at his dwelling nearby, words passed between them and finally there was an exchange of some three or four shots resulting, according to the testimony of the Commonwealth, in the wounding of appellant. Deceased was not injured in that difficulty. After this shooting, appellant disappeared but returned within an hour bearing a double barreled shot gun and a Winchester repeating rifle and ,finding the deceased and his wife seated at the front door of their dwelling, opened fire upon them. Ike Gabbard and his wife were both struck by these shots, with fatal results in the case of the husband. They retreated into and through the house, and when Ike Gabbard had reached a point about fifty yards from his house he fell to the ground dead. Appellant undertakes to explain his return with the guns in this way. He was a constable and had arranged with some persons to aid him in the arrest of a deserter from the United States army, and these guns were for those who were to assist

him in this duty, and the road passing the residence of deceased was the only way he could proceed in the effort to arrest this deserter.

The Commonwealth made out a strong case of inexcusable homicide. While in the motion and grounds for a new trial it was urged that the verdict was not supported by the evidence, that point is not seriously pressed here, but counsel insist that the judgment should be reversed because the trial court erred in excluding competent evidence. This consisted of threats alleged to have been made by the deceased against appellant on the day of the homicide, and only a few hours previous thereto. It is held in Commonwealth v. Thomas, 31 Rep., 899, and Wheeler v. Commonwealth, 120 Ky., 697, that evidence of this character is competent for the purpose of showing the state of mind of the one making them, and also for the purpose of determining who was the agressor. In all cases, where it has reasonably appeared that the admission of such evidence would throw light upon either of these questions, where they were involved, it has been held error on the part of the trial court to exclude it. If the killing had occurred during the first encounter, it would have been error to exclude this evidence of previous threats made by the deceased against appellant, but, according to the evidence offered by appellant, no injury resulted from the first encounter. From all the evidence, it is apparent that it only resulted in arousing appellant's anger, and, if the evidence for the Commonwealth is to be believed, he left the scene of the difficulty declaring that he was going after his gun and kill his cousin. He undoubtedly continued in this frame of mind, for on his road home he passed several persons to whom he related the story of the difficulty with his cousin, with more or less detail, and to each he declared, in substance, his purpose to carry out the threat made in the presence of deceased's wife when he left their home. He went as rapidly as he could to his own home, a mile or a mile and a quarter distant, got his gun, and started back toward the home of deceased. On his way he stopped at the house of a relative, who was not at home at the time, went in, got a Winchester rifle, and proceeded back to the scene of the first difficulty. It is in evidence that he was followed by two of his children and was requested by some friends, whom he passed, to return to his home and not have any difficulty. While he stoutly denies any purpose to have further trouble with the deceased, the conclusion

is irresistible, from the overwhelming weight of the evidence, that appellant returned to the home of deceased for the purpose of avenging a wrong which he conceived deceased had done him, by shooting him or shooting at him in the first encounter. Appellant had declared his purpose to kill deceased, and immediately that he reached the later's home, he opened fire upon him while he was standing in the door of his own home. His aim was true, and the effect of the shots deadly. Deceased and his wife retreated into their house and out of the rear portion thereof, the wife going in one direction, the deceased in another. Appellant followed them into the house, searched for them, and when he failed to find them there, fired his gun two or three times while in the house.

We are unable to see, under the circumstances as developed by this evidence, what light evidence of previous threats could have shed upon the question of who was the aggressor, or the frame of mind in which the deceased was at the time the last difficulty commenced. Still, this evidence was competent, but, while competent, it was merely cumulative; and when this is the case, no reversal should be ordered because of its exclusion, where it appears, from a consideration of the entire record, the accused had a fair trial. Hargis v. Commonwealth, 135 Ky., 578. The evidence as to the first difficulty, which was given to the jury in detail, showed the frame of mind the deceased was in, and the conduct of each party left no room for doubt as to who was the aggressor in the difficulty, resulting in the killing for which appellant was tried. Under the circumstances, it was not prejudicial for the trial court to exclude this evidence of threats from consideration by the jury.

The evidence for the Commonwealth was to the effect that appellant was shot in the arm during the first encounter, and that this angered him and aroused in him a murderous spirit, causing him then and there to declare his purpose to kill deceased. With this end in view, he went to his home, armed himself, and, despite the pleadings and protests of his relatives and friends, returned to the scene of the difficulty and carried his threat into execution. It was cold-blooded, premeditated murder, and it is difficult to see how a jury, at all mindful of their oaths, could have imposed a milder punishment. Few cases have come before us where the evidence so clearly established a murderous purpose, so deliberately planned and so boldly executed.

After a carful consideration of the record, we see no reason for disturbing the judgment. It is, therefore, affirmed.