## McLain v. Commonwealth.

(Decided October 6, 1916.)

Appeal from Marion Circuit Court.

1. Homicide—Character of Decedent As to Disposition—Evidence.— On the trial of one charged with homicide it is competent for the defendant to prove by persons intimate with the decedent that he was a man of overbearing disposition and was quarrelsome and inclined to bring on difficulties and seek trouble where the plea was self-defense and it was doubtful, under the evidence, which was the aggressor.

2. Homicide—Testimony of Widow of Decedent—Competency.—The widow of the decedent may testify for the defendant to any fact, the knowledge of which she acquired during the marriage relation without confidential communication from her husband and independent of the marriage relation.

3. Homicide—Evidence.—Where there is evidence for the defendant that he had warned the decedent, who was advancing upon him, to stop, and the defendant himself testified that the first two shots he fired were into the ground in front of the deceased as deceased advanced upon him, it was error for the court to refuse the evidence of another witness that immediately after the shooting he examined the ground where it took place and there found the two holes in the ground.

W. H. RIVES, C. S. HILL, W. H. SPRAGENS and JOHN A. POLIN for appellant.

M. M. LOGAN, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Appellant was indicted in the Marion Circuit Court charged with the murder of Sam Gribbens. On his trial he was found guilty of manslaughter and sentenced to confinement in the penitentiary for not less than ten nor

more than twenty-one years, and from the judgment on that verdict he prosecutes this appeal.

Before considering the questions relied upon for reversal we will give a short statement of the facts so that those questions may be understood.

Prior to the fall of 1914 appellant was a farmer in Marion County, living near Loretto; he had been married something like twenty years and he and his wife had raised a family of children. In the fall of 1914 the decedent Sam Gribbens moved into the neighborhood where appellant lived and occupied a house on the farm of his kinsman, Andy Gribbens. Some time after his advent into the neighborhood, according to the theory of appellant, differences arose between appellant and his wife which finally culminated in an action for divorce by her, which seems to have been more or less acrimonious.

It is charged by the appellant, and supported by considerable evidence, that the decedent Sam Gribbens had interfered in his domestic affairs and had taken a very active interest upon behalf of the wife in the divorce suit. During this period appellant had received more than one threatening letter or communication and had been visited at his home by unknown persons, although on the trial of this case the decedent was not connected by any evidence with these occurrences.

Notwithstanding the pendency of the divorce action the appellant and his wife continued to live at the same house under some sort of an arrangement made by them through their attorneys.

On the 20th of November, 1915, it was expected that the Circuit Court would enter a judgment in the divorce case at Lebanon, the county seat, and appellant and his wife drove from their home to Loretto and from there went to Lebanon on the train; likewise the decedent Sam Gribbens attended the Court at Lebanon on that day. After they had completed their business in Lebanon the parties took the afternoon train and all returned to Loretto, appellant and his wife occupying the same seat on the car, and Gribbens being on the same train.

When they alighted from the train at Loretto they were met by the wife of Andy Gribbens who went with appellant and his wife to a store nearby, and shortly thereafter the decedent Sam Gribbens also appeared at

the store. Mrs. Gribbens suggested to appellant's wife that she ride home with her in her buggy as she was alone in the buggy, and the decedent was overheard to ask Mrs. Gribbens if she wanted him to go get her buggy, and upon being informed that she did, he went and brought the buggy to a side or back door of the store, and appellant and his wife and Mrs. Gribbens all started out at the back door, appellant at the time, however, protesting against his wife's going with her and insisted that she go home with him; Mrs. McLain seemed to hesitate but finally concluded to go in the buggy with Mrs. Gribbens, and they both got into the buggy, and as they drove off Sam Gribbens was standing about at the head of the mule in the buggy and appellant at about the rear wheel. Immediately after they had driven off a violent quarrel came on between appellant and Gribbens; they cursed and abused each other, and the evidence is very conflicting as to which was the aggressor. Finally, however, appellant opened a small valise, which he had carried all day and in which he had some papers, and took therefrom a pistol with which he shot and killed Gribbens. As stated above, the evidence is conflicting as to the attitude and positions of the parties at the time of the shooting; the Commonwealth's evidence shows by one or more witnesses that at the time the shots were fired Gribbens was not advancing upon appellant but had stopped, whereas the evidence for the defendant shows that at that time he was advancing upon him with his left hand up and his right hand down by his side with an open knife in it. After Gribbens was shot he was found with a bottle of whiskey in one pocket and an open knife in his right hand pants pocket.

There is no complaint of the instructions, and as we have reached the conclusion that there must be another trial of this case it will be unnecessary to consider the appellant's complaint of the Court's refusal to draw names from the jury wheel after the regular panel had been exhausted, and of the alleged error in restricting the statement made by the attorney for the appellant in the opening of the case.

This leaves for our consideration only the questions concerning the admission and rejection of evidence.

The Court declined to permit the appellant to show on the trial that the decedent was a man of overbearing temper and disposition, that he was quarrelsome and bul-

lying, that he was addicted to the drinking of intoxicating liquors, and at such times was more disagreeable, and that he had a disposition to precipitate difficulties and seek trouble; and by one witness it was offered to show that his general reputation was that of an overbearing, bullying and quarrelsome man.

Under the circumstances of this case we think this evidence was all competent; the defendant's plea was self-defense, and the issue was sharply drawn as to who was the aggressor at the time of the homicide, and the evidence was so conflicting as that anything bearing upon the nature, characteristics and temperament of the decedent might have enabled the jury to reach a correct conclusion on that question.

It is conceded by the Commonwealth that evidence of his general reputation as to these things was competent, but it was denied to the appellant the right to prove that. We entertain no doubt that where in a case of homicide there is a serious conflict in the evidence as to who was the aggressor the defendant has a right, not only to prove the general reputation of the decedent in these respects, but to present evidence by persons intimately acquainted with him to the effect that such was his nature, character, temperament and disposition. It is apparent how such evidence would enable a jury to act more intelligently and justly in a case where there is grave doubt as to who was in fact the aggressor. 16 Cyc. 1271.

The evidence is competent for the same reason and upon the same principle that uncommunicated threats are admissible as bearing upon the question of who was the aggressor. Wheeler v. Commonwealth, 120 Ky. 697; Gabbard v. Commonwealth, 154 Ky. 140; Riley v. Commonwealth, 94 Ky. 266.

Appellant offered also to prove by the widow of the deceased Gribbens that he, before his death, had been taking an active part in the differences between appellant and his wife and this evidence the Court refused to admit. We are unable to determine from the record whether this evidence was or not competent; it was incompetent if she acquired the knowledge from any confidential communication from her husband during her marriage or if she acquired the knowledge by reason of the marriage relation, but it was competent if she acquired such knowledge without such confidential com-

munication from her husband and independent of the marriage relation. Hostetter v. Green, 159 Ky. 611.

The other evidence offered to be shown by this witness was that the conduct of her husband and his activities in the troubles between McLain and his wife was such as to cause her to believe and fear that serious trouble might result, and that on the day of the trial for that reason she begged her husband not to go to Lebanon because of her apprehension of trouble. Clearly this evidence was not competent in any event; it only sought to show a state of mind in the decedent's wife and not to prove any concrete facts.

The defendant and one of his witnesses proved that the first two shots fired were into the ground in front of the deceased and for the purpose of stopping him; and the Court declined to permit the defendant to prove by the witness, Thompson, that immediately after the shooting he examined the ground where the shooting took place and there found the two holes that the first two shots had made in the ground. Manifestly this evidence was competent. It not only strongly corroborated the defendant's own evidence, but tended to substantiate his theory of the case that he had warned the decedent to stop and he had failed and refused to do so.

The Court on the trial over the defendant's objection permitted the Commonwealth to introduce and read in evidence a temporary restraining order issued against him in the divorce case and also to read to the jury a judgment on a rule for contempt against the defendant in that case. The defendant's plea in this case was self-defense, and how those records could have elucidated any issue in this case we cannot see. Manifestly this was improper.

For the reasons indicated the judgment is reversed with directions to grant appellant a new trial and for for further proceedings consistent herewith.