James **LUNSFORD**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

Jan. 24, 1969.

Ben K. Wilmot, Stanford, for appellant.

John B. Breckinridge, Atty. Gen., and George F. Rabe, Asst. Atty. Gen.; for appellee.

PALMORE, Judge.

James Lunsford appealed to this court from an order of the Lincoln Circuit Court denying his application for release from custody on a writ of habeas corpus. This opinion is issued incident to an order entered in special session on December 30, 1968, affirming the action of the circuit court. KRS 419.130.

The record shows that Lunsford is detained in the Lincoln County Jail under a $75,000 peace bond by an order of the Lincoln County Judge entered on June 6, 1968, on which day Lunsford had been arrested on a .charge of maliciously shooting at one C. B. Adams with intent to kill him. KRS 435.170. Lunsford was later indicted by the grand jury for that offense and was still awaiting trial when the habeas corpus proceeding came before this court. We affirmed the order of the circuit court refusing to release him from custody because the record did not contain enough factual information for us to determine whether the amount of the peace bond was unreasonable. Upon further consideration of the case we have come to the conclusion that there is no jurisdiction to set a peace bond for more than $5,000 or to detain a person in jail for more than three months in default of giving such security.

RCr 3.06(1) provides that if there are reasonable grounds to believe that the release of a defendant brought before a magistrate pursuant to RCr 3.04 would endanger persons or property, the magistrate shall require bail in any sum deemed reasonable to keep peace and for the defendant's good behavior for one year. The Rules do not limit the amount of such bail, nor do they specify the length of time a person may be kept in jail upon his failure to provide it.

The Rules of Criminal Procedure became effective on January 1, 1963. Before that time the basic law applicable to placing a person under bond to keep the peace was provided by Sections 382 through 393 of the Code of Practice in Criminal Cases (usually called the Criminal Code). Section 384 limited the amount to $5,000 if there were reasonable grounds to apprehend that the defendant would commit an offense endangering human life, and to $1,000 in other cases. Sections 385 and 386 limited the time the defendant could be kept in jail for default in giving such security to three months. As in the case of the Civil Code, the procedural content of which was superseded by the Rules of Civil Procedure, effective on July 1, 1953, the Criminal Code was entirely statutory. The provisions covering peace bonds appeared in Sections 378 through 389 of the original Criminal Code as adopted effective July 1, 1854, and remained virtually intact until January 1, 1963. See Johnson, Harlan & Stevenson's Code of Practice in Civil and Criminal Cases for the State of Kentucky (1854).

The object of Chapter 234, Acts of 1962, was to remove from the body of statutory law all matters within the scope of judicial rule-making. Section 61(2) of the Act declared the repeal of the Criminal Code "in its entirety." Unlike many other portions of the Criminal Code which were deemed to be subjects within the legislative

domain, the provisions relating to peace bonds were not re-enacted as part of the statutes, but were left subject to the rule-making authority of this court. Presumably the drafters of the Rules considered the matter as procedural rather than substantive, but we do not think so. The power (that is, the jurisdiction) of a court or magistrate to take away a person's liberty is a matter of substance, and cannot originate from the judicial power to regulate practice and procedure in the courts.[1] "An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction * * *", United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941). "A frailty in a statute cannot be remedied by a judicial rule which provides plaintiff a remedy he does not have under the act." Universal Credit Co. v. Antonsen, 374 Ill. 194, 29 N.E. 2d 96, 130 A.L.R. 626, 629 (1940).

■ Since Chapter 234, Acts of 1962, prescribed a complete set of Rules, including RCr 3.06, subject to revision by this court either before or after the effective date of the Act, we have considered whether RCr 3.06 can reasonably be validated as a legislative enactment, but have decided that it can not. Section 0 of the Act declared that the Rules were prescribed in accordance with the principle, finding and declaration contained in the preamble. The preamble expressed the primary purpose of keeping to the legislature those things that lie within the legislative power and leaving to the court those things that are within the judicial power, and an auxiliary purpose of prescribing "a better expression of current legislative policy for those matters in which both legislative and judicial discretion are involved." By specifically making the Rules prescribed in the Act subject to the rule-making authority of the Court of Appeals the General Assembly can have had no intention of doing more than expressing a policy of approval toward the Rules as prescribed in the Act itself. It is elementary, of course, that the General Assembly could not give the judiciary power to amend or repeal that which only the General Assembly could enact in the first instance. From this fundamental premise we deduce that the General Assembly did not in fact intend to "enact" any of the Rules prescribed in the Act. See, for example, Section 60(2) of the Act, in which it is provided that in the event of a legislative amendment of any section of the Criminal Code which has been incorporated into the Rules, "it shall not be effective as a statute, but shall be construed as a concurrent resolution directed to the Court of Appeals."

■ As a rule of procedure RCr 3.06 is valid. What we hold here is that it cannot serve as the source of a magistrate's authority to exact a peace bond and to jail a defendant upon his failure to post it. Ordinarily the unqualified repealer contained in Section 61(2) of the Act would have to be construed as having eliminated the only source of such authority. But this was not an ordinary Act, and we do not feel bound to apply to it the ordinary rules of construction, especially when they would produce a result completely at variance with what was intended by the legislature. There is, after all, no reason for rules of construction to exist except to aid in the process of ascertaining what was intended. Obviously the peace bond provisions of the Criminal Code would not have been repealed without a simultaneous re-enactment except for the mistaken assumption that RCr 3.06 would fill the void. Under these unusual circumstances we hold that Section 61(2) of the Act did not operate to repeal Title X, Chapter II (Sections 382 through 393) of the Criminal Code. It follows that the county judge did not have power to set the bond at an amount greater than $5,000 or to order Lunsford detained for more than three months.

---

1. The power to punish for contempt has more complex origins. Cf. Goldfarb, The Contempt Power, 1–45 (1963).

This court's order of December 30, 1968, is vacated and set aside and the cause reversed with directions that an order be entered directing appellant's discharge from further custody pursuant to the order of the Lincoln County Court committing him to jail upon his failure to furnish the security required by its order of June 6, 1968.

All concur.