Adrian BOYLE, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Court of Appeals of Kentucky.

March 29, 1985.

Discretionary Review Denied and
Opinion Ordered Published by
Supreme Court Aug. 28, 1985.

Joseph R. Johnson, Asst. Atty. Gen.,
David L. Armstrong, Atty. Gen., Frankfort,
for appellee.

Joanne Yanish, Asst. Public Advocate,
Paul F. Isaacs, Public Advocate, Frankfort,
for appellant.

Before COMBS, McDONALD and WIL-
HOIT, JJ.

WILHOIT, Judge.

This is an appeal from a judgment of the
Fayette Circuit Court sentencing the appel-
lant to ten years' imprisonment upon his
conviction of second-degree manslaughter.

The appellant's first ground for reversal
is that prior to selection of the jury which

tried the case, the trial judge, sua sponte, informed the panel from which the jury was selected:

> ... that the penalty that they would impose in the case would always be the maximum penalty; that whether the defendant served any days first of all is dependent upon whether or not I grant him probation and that depended upon many factors, and that they were not to consider that in rendering their verdict in the case. Secondly, if he went to prison, it didn't mean he would stay the maximum term but he might do so. Therefore, they were to look at the facts in the case and make their determination on that basis only.

The long-recognized rule in this jurisdiction has been that neither the court nor the prosecutor should mention to a jury that a defendant could be paroled. Such information should not be given to prospective jurors as well. *See Abernathy v. Commonwealth,* Ky., 439 S.W.2d 949 (1969). The history of the rule and when sanctions were and were not imposed is set out in *Broyles v. Commonwealth,* Ky., 267 S.W.2d 73 (1954). Reversal has been mandated in a case in which the Court had given the jury information about parole. *See Ringo v. Commonwealth,* Ky., 346 S.W.2d 21 (1961). *See also Green v. Commonwealth,* Ky., 556 S.W.2d 684 (1977). Even in response to a question from the jury concerning parole, the trial court may not provide any information beyond informing the jury that the subject of parole is not to be given any consideration by them in determining innocence, guilt, or punishment. *See Brown v. Commonwealth,* Ky., 445 S.W.2d 845 (1969). One of the most obvious reasons for the rule is that "the jury's verdict should not be influenced by what another department of state government might or might not do, or had authority to do." *Postell v. Commonwealth,* 174 Ky. 272, 192 S.W. 39, 44 (1917).

It is true that in the same breath in which the trial court advised the prospective jurors that if the appellant went to prison, he would not necessarily "stay the maximum term," he also advised them they were to look at the facts in the case and make their determination on that basis only. The Commonwealth argues that this latter advice cured the error of the former. We think not, and it may well have only further confused the prospective jurors. Was the court telling them these things because he believed for one reason (probation) or another (parole) that the appellant was unlikely to serve whatever sentence the jury imposed? Although they had been told specifically to disregard probation in arriving at their verdict, was it being suggested by the judge that they speculate upon whether the appellant might be paroled based upon the facts of the case, and take that into account in their arriving at a sentence? While most prospective jurors may not have gotten either of these impressions from what the court said, we obviously cannot say none did, or that none on the actual trial jury did. Trial courts must exercise great caution so as not to appear to invite jurors, either directly or indirectly, to engage in speculation on matters which do not concern them and which can result in substantial prejudice to a defendant.

It has been recognized that the error in giving prospective jurors information about parole can be harmless if upon a consideration of the whole case the reviewing court does not believe there is a substantial possibility that the result would have been any different. *See Abernathy v. Commonwealth, supra.* We observe that in the case before us the jury fixed the appellant's punishment at the maximum for the offense of which it found him guilty. With this in mind, we cannot say the trial court's error was harmless.

The appellant's next ground for reversal is that the trial court erred in refusing to instruct the jury that the appellant was privileged to use deadly physical force to protect himself against sexual intercourse compelled by force. *See KRS 503.050.* The evidence indicated that the altercation between the appellant and the victim began when the victim attempted to force the appellant to orally stimulate the

victim's penis. The court refused to give the instruction because it held that the right to use deadly physical force applied to "sexual intercourse" as defined in KRS 510.010(8) but not to "deviate sexual intercourse" as defined in subsection (1) of the same statute. The court also appeared to hold that even if the right applied to cases of compelled deviate sexual intercourse, the evidence did not warrant such an instruction because the appellant's use of deadly force was not for the purpose of protecting himself against that.

We do not believe the trial court was correct in holding that the term "sexual intercourse" as used in KRS 503.050 is not intended to include sexual intercourse of the kind involved here. KRS 510.010 itself limits the definitions which it contains to "apply in this chapter." We have nothing to indicate that the Legislature intended this definition to apply to the self-protection statute. Indeed, common sense leads us to believe that it did not. It is beyond reason to think that the Legislature intended that a female have the right to use deadly force to resist being raped, but not being sodomized. It is equally beyond reason to think that the Legislature did not intend for a male to have the right to use deadly physical force to resist being sodomized. In fact, the 1974 Commentary to KRS 510.070 recognizes that a homosexual attack "produces the same fear, anger and resentment as a heterosexual attack."

We conclude that the term "sexual intercourse" as used in KRS 503.050 is intended to include both "sexual intercourse" and "deviate sexual intercourse" as defined in KRS 510.010.

■ A closer question is presented in determining whether there was an evidentiary basis for the instruction sought. However, upon careful analysis it appears that the appellant's testimony was that he choked the victim, not to avoid being forced to perform a sexual act, but to avoid being "hurt." He stated that he knew the victim was going to "hurt" him whether he performed the act or not. From the context of his testimony, it seems apparent that the "hurt" which the appellant wanted to avoid was the immediate and no doubt acute pain which the victim was inflicting upon him from the manner in which he was holding the appellant, and to avoid some future hurt of an unexplained nature, which the victim might later inflict upon the appellant. If upon retrial the evidence in this respect is the same, then an instruction on self-protection from compelled sexual intercourse would not be warranted.

■ The appellant argues that the trial court also erred in refusing to admit evidence of the victim's reputation for peace and quietude. Because this question may again arise on retrial, we shall consider it. The trial court excluded this evidence because there was no showing that the appellant knew of that reputation. The Commonwealth maintains that this was the proper course to be followed under *Amos v. Commonwealth*, Ky., 516 S.W.2d 836 (1974), which held that unless the defendant knew of his victim's reputation for violence, evidence of that reputation has no bearing on the reasonableness of the defendant's acts in self-defense and is, therefore, inadmissible. The soundness of this rule seems to us beyond question. On the other hand, this kind of evidence is also admissible as bearing on who was the aggressor. *See McGill v. Commonwealth*, Ky., 365 S.W.2d 470 (1963); *Bartlett v. Vanover*, 260 Ky. 839, 86 S.W.2d 1020 (1935); *Conley v. Commonwealth*, 225 Ky. 275, 8 S.W.2d 415 (1928); *McLain v. Commonwealth*, 171 Ky. 373, 188 S.W. 377 (1916). *But see* dictum in *Wooten v. Commonwealth*, Ky., 478 S.W.2d 701 (1972). When offered for that purpose, whether the defendant knew of the victim's reputation is irrelevant because the inquiry "is one of objective occurrence, not of subjective belief." IA J. Wigmore *Evidence in Trials at Common Law* § 63, at 1369 (Tillers rev. 1983).

We find no abuse of discretion in the trial court's limitation of the number of character witnesses which the appellant could present, *see Conley v. Commonwealth, supra,* and we do not believe the

court erred in admitting photographs of the victim's body, which cast doubt on some of the appellant's testimony regarding the events leading up to the victim's death. *See Moore v. Commonwealth,* Ky., 489 S.W.2d 516 (1973). There was no error in the admission of the appellant's out-of-court oral statement.

Because of the result we have reached, it is not necessary to consider any other assignment of error raised by the appellant.

The judgment of the trial court is reversed and this case is remanded for a new trial.

All concur.