COMMONWEALTH of Kentucky, Movant,

v.

John Edgar RENEER, Respondent.

No. 86-SC-780-CL.

Supreme Court of Kentucky.

Aug. 6, 1987.

As Amended Aug. 6, 1987.

David L. Armstrong, Atty. Gen., Frankfort, John Paul Runyon, Ian Sonego, Sp. Asst. Attys. Gen., Pikeville, for movant.

J. David Niehaus, Frank W. Heft, Jr., Daniel T. Goyette, Jefferson Dist. Public Defenders, Louisville, for amicus curiae.

Mark A. Posnansky, Paul F. Isaacs, Asst. Public Advocates, Frankfort, Samuel R. Conkright, Jr., Asst. Public Advocate, Owensboro, for respondent.

## OPINION OF THE COURT CERTIFYING THE LAW

The question is whether or not K.R.S. 532.055 (The Truth in Sentencing Statute) violates Section 28 of the Kentucky Constitution relating to the separation of powers among the separate departments of state government.

K.R.S. 532.055 provides as follows:

"(1) In all felony cases, the jury in its initial verdict will make a determination of not guilty, guilty, guilty but mentally ill, or not guilty by virtue of insanity, and no more.

"(2) Upon return of a verdict of guilty or guilty but mentally ill against a defendant, the court shall conduct a sentencing hearing before the jury, if such case was tried before a jury in the hearing the jury will determine the punishment to be imposed within the range provided elsewhere by law. The jury shall recommend whether the sentences shall be served concurrently or consecutively.

"(a) Evidence may be offered by the Commonwealth relevant to sentencing including:

"1. Minimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor;

"2. The nature of prior offenses for which he was convicted;

"3. The date of the commission, date of sentencing and date of release from confinement or supervision from all prior offenses;

"4. The maximum expiration of sentence as determined by the division of probation and parole for all such current and prior offenses; and

"5. The defendant's status if on probation, parole, conditional discharge, or any other form of legal release;

"(b) The defendant may introduce evidence in mitigation. For purposes of this section, mitigating evidence means evidence that the accused has no significant history of criminal activity which may qualify him for leniency. This section shall not preclude the introduction of evidence which negates any evidence introduced by the Commonwealth; and

"(c) Upon conclusion of the proof, the court shall instruct the jury on the range of punishment and counsel for the defendant may present arguments followed by the counsel for the Commonwealth. The jury shall then retire and recommend a sentence for the defendant.

"(3) All hearings held pursuant to this section shall be combined with any hearing provided for by KRS 532.080. This section shall not apply to sentencing hearings provided for in KRS 532.025.

"(4) In the event that the jury is unable to agree as to the sentence or any portion thereof and so reports to the judge, the judge shall impose the sentence within the range provided elsewhere by law."

John Edgar Reneer was indicted for the offense of first-degree sodomy and as a first-degree felony offender. The offense

was alleged to have been committed in 1985. K.R.S. 532.055 became effective in July, 1986. Reneer was brought to trial in August, 1986. Thus, the offense of which he was accused was allegedly committed before the effective date of the statute, and his trial began after the effective date.

Before the trial commenced, the trial court ruled that the provisions of K.R.S. 532.055 relating to a bifurcated trial in felony cases were unconstitutional because the statute attempted a legislative infringement upon the power of the Supreme Court to prescribe rules of practice and procedure for the Court of Justice.

Reneer was tried by a jury and found not guilty. Because of the impact of K.R.S. 532.055 upon hundreds of pending criminal trials throughout the Commonwealth, we granted the motion of the Commonwealth to certify the law as to the constitutionality of K.R.S. 532.055.

We hold that K.R.S. 532.055 is procedural in nature. Its provisions deal with the procedure to be followed in the trial and sentencing of criminal felony trials. The statute does not add or remove any element necessary to convict of any crime, and it does not increase or lower the penalty that can be imposed upon conviction.

Following the enactment of the statute, the jury is permitted to hear some evidence in the sentencing phase of a trial that would not have been admissible theretofore, but this evidence does not go to the issue of guilt or innocence. It neither increases or lessens the penalty or the amount of proof required to convict, and the statute making such evidence competent is likewise procedural. *Murphy v. Commonwealth*, Ky., 652 S.W.2d 69 (1983).

The Supreme Court of this Commonwealth has the authority to prescribe rules of practice and procedure in the courts of this Commonwealth. Kentucky Constitution, Section 116. Because K.R.S. 532.055 is a legislative attempt to invade the rule making prerogative of the Supreme Court by legislatively prescribing rules of practice and procedure, it violates the separation of powers doctrine enunciat-ed in Section 28 of the Kentucky Constitution.

Nevertheless, it has not been the policy of this court to nullify as a matter of course all legislation which infringes to some extent upon a proper function of the judiciary. In *Ex Parte Farley*, Ky., 570 S.W.2d 617 (1978), we said:

"It is not our disposition to be jealous or hypertechnical over the boundaries that separate our domain from that of the legislature. Where statutes do not interfere or threaten to interfere with the orderly administration of justice, what boots it to quibble over which branch of government has rightful authority? We respect the legislative branch, and in the name of comity and common sense are glad to accept without cavil the application of its statutes pertaining to judicial matters, just as we accept KRS 532.075, even though it has been argued with much force that there is no constitutional basis for a statute enlarging the scope of appellate review beyond the matters of record in the proceeding under consideration."

*Id.* at 624–625.

In *O'Bryan v. Commonwealth*, Ky., 634 S.W.2d 153 (1982), this court considered a statute which established procedures for a change of venue in criminal cases. We said:

"Until this statute is superseded by this Court, under the Court's paramount rule-making authority, it stands as enacted by the General Assembly under the principles of comity elucidated in *Ex Parte Auditor of Public Accounts*, Ky., 609 S.W.2d 682 (1980). Under the statute's clear and unambiguous terms, a hearing in open court is required."

*Id.* at 158.

In *Commonwealth v. Littrell*, Ky., 677 S.W.2d 881 (1984), we noted the fact that this court could have, but had not, preempted a procedural statute by the promulgation of a rule of procedure, and we held that the fact that this court had not preempted the statute by the adoption of the pertinent rule of procedure was in itself tacit approval of the efficacy of the statute.

Perhaps our view was best expressed in *Ex Parte Auditor of Public Accounts,* Ky., 609 S.W.2d 682 (1980), as follows:

"The correct principle, as we view it, is that the legislative function cannot be so exercised as to interfere unreasonably with the functioning of the courts, and that any unconstitutional intrusion is per se unreasonable, unless it be determined by the court that it can and should be tolerated in a spirit of comity. The converse also is true, and in *Lunsford v. Commonwealth,* Ky., 436 S.W.2d 512 (1969), this court recognized that its own rule authorizing imprisonment for failure to execute a peace bond was an unconstitutional infringement upon the legislative prerogative. And in *Raney, supra,* for the same reason, we declined the invitation to trespass upon the exclusive right of the Senate to determine the qualifications and disqualifications of its own members. Such an inquiry is, of course, of a judicial nature, but the Constitution excludes it from the judicial process.

*"Inevitably, there is and always will be a gray area in which a line between the legislative prerogatives of the General Assembly and the rule-making authority of the courts is not easy to draw. The policy of this court is not to contest the propriety of legislation in this area to which we can accede through a wholesome comity.* There is, for example, the statute providing for the disqualification of judges, KRS 26A.015, as contrasted with SCR 4.300 Canon 3, C(1), in which the same subject-matter is included as a part of the Code of Judicial Conduct. There is also the matter of court costs and fees. See KRS 24A.270. Even the statutory creation of a small claims division within the structure of the constitutionally-established district court, KRS 24A.230, is not beyond the pale of an honest difference of opinion. But we hold the General Assembly in the highest respect, and much prefer cooperation over conflict. It has done great work in accommodating the statutes to the new and hitherto-untried requirements of the 1975 Judicial Amendment, and to the extent that we are able to accept its judgments without leaving seeds of future jeopardy to the integrity of the judicial system we shall continue to do so." (Emphasis ours.)

*Id.* at 688.

Although it is apparent that K.R.S. 532.-055 constitutes an encroachment by the General Assembly upon the prerogatives of the Judiciary, it is, nevertheless, not an unreasonable encroachment if it can be accepted under the principles of comity.

We look then to the specific provisions of K.R.S. 532.055 to determine whether the act poses any unreasonable interference with the orderly functioning of the courts.

Sections 1 and 2 of the act require that in felony cases the jury's determination of guilt or innocence shall be bifurcated from the assessment of penalty. This procedure has already been adopted in death penalty cases. The fact that the jury must deliberate once on the issue of guilt or innocence, and if guilty, must hear further evidence and deliberate again upon the assessment of penalty, will doubtless consume additional time in the trial process. Offset against this is the fact that the jury, in the sentencing phase, will be able to hear much evidence relevant to sentencing which it is not now permitted to hear.

One of the chief deficiencies in our present procedure is that, after reaching a verdict of guilt, the jury is required to sentence in a vacuum without any knowledge of the defendant's past criminal record or other matters that might be pertinent to consider in the assessment of an appropriate penalty. On balance, the inconvenience of a bifurcated trial is a small price to pay for a better informed sentencing process.

Section 3 of the statute provides that the penalty-phase hearing in a felony case will be combined with the hearing required by K.R.S. 532.080 in persistent felony cases. K.R.S. 532.080 provides for enhanced penalties for persistent felony offenders and requires that when a defendant is charged with being a persistent felony offender, the determination of whether or not he is such an offender and the punishment to be im-

posed shall be determined in a separate hearing from the proceeding that resulted in his last conviction.

We do not perceive any apparent difficulty in this procedure. The first step of the trial will try the guilt or innocence of the defendant of the crime with which he is charged. The bifurcated penalty phase will decide the punishment on the specific charge after additional evidence pertaining to sentencing is heard.

If the accused is also charged as a persistent felony offender, the penalty phase and a persistent *felony offender* phase can be combined because the same evidence that is pertinent toward fixing the penalty is also pertinent for consideration in the enhancement of sentence, and the jury in the combined bifurcated hearing could be instructed to (1) fix a penalty on the basic charge in the indictment; (2) determine then whether the defendant is guilty as a persistent felony offender, and if so; (3) fix the enhanced penalty as a persistent felony offender.

Section 4 of the act provides for judge sentencing within the limitation of penalties provided by law if the jury cannot agree upon the sentence. Presently RCr 9.84 provides that:

"When a jury returns a verdict of guilty it shall fix the degree of the offense and the penalty, except where the penalty is fixed by law, in which case it shall be fixed by the court."

In many states the sentence in criminal cases is fixed by a judge rather than a jury. It has been argued that judge sentencing lends itself to more uniform sentencing, and this court has, in the past, given consideration to adopting such a rule. We have not done so as yet, but we see no harm in permitting judge sentencing in the limited circumstances set forth in K.R.S. 532.055(4). *Many hung juries result when a jury has agreed unanimously on guilt but cannot unanimously agree on the penalty. In such cases, a sentence then fixed by the judge within the range of penalties provided by law does not appear to be an unreasonable interference with orderly proce-*

dure when weighed against the alternative of a complete new trial.

■ We reiterate that this court has the power to preempt the statute by the promulgation of different rules of procedure at any time we determine it necessary. We reserve the right to consider any abuses or injustices alleged to be caused by K.R.S. 532.055 when presented by a proper case, but until such time as we do so, we decline to hold K.R.S. 532.055 unconstitutional, and we accept its provisions for the time being under the principle of comity.

■ Because the act relates to changes in procedure rather than substantive law, its application at the trial of one for an offense committed before its enactment is not an ex post facto application of the law. *Murphy v. Commonwealth,* Ky., 652 S.W.2d 69 (1983).

■ Further, we *do* not consider the application of the act to the trial of the defendant Reneer to give retroactive effect to the statute in violation of K.R.S. 446.080(3).

The act deals with procedures at trial. The procedure at trial is governed by the rules of procedure which exist at the time of trial, not at the time of the commission of the offense. No one has a vested right in the modes of procedure, and the state, upon grounds of public policy, may regulate them at pleasure.

Such regulations of the mode in which the facts constituting guilt may be placed before the jury can be made applicable to prosecutions or trials thereafter and without reference to the date of the commission of the offense charged. *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884); *Murphy v. Commonwealth, supra.*

The law is so certified.

STEPHENS, C.J., and GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate attached opinion in which LAMBERT, J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

Our Court has elected to grant comity to a new law that effects substantial changes in judicial procedure. These changes are poorly conceived and constitutionally flawed.

The Majority Opinion agrees to these changes under the principle of comity. "Comity" means, by definition, judicial adoption "not as a matter of obligation, but out of deference and respect." Black's Law Dictionary, p. 242, "Judicial Comity," (5th ed. 1979). When we do this, it is not the General Assembly but our Court that has spawned this new sentencing system. Our Court, not the General Assembly, must bear the responsibility for its future consequences.

The Majority Opinion states, and I agree, that "KRS 532.055 is a legislative attempt to invade the rule making prerogative of the Supreme Court," and that "it violates the separation of powers doctrine enunciated in § 28 of the Kentucky Constitution." Constitutionally this statute is utterly without lawful effect, but we give it life through comity. This "comity" is "A Comity of Errors." Our Court should know, even if the General Assembly did not, that the name assigned to the bill by its proponents, "Truth-in-Sentencing," is a euphemism. In practice we are adopting a system of "Half-Truths-in-Sentencing."

The new Judicial Article enacted in 1975 entrusted the Supreme Court, not the General Assembly, with exclusive power to prescribe "rules of practice and procedure for the Court of Justice" such as the General Assembly set up in the sweeping changes enacted by KRS 532.055. See Ky. Const. § 116. With the power to act goes full responsibility for the action taken. It is our Court, not the General Assembly, that has made KRS 532.055 the law of this Commonwealth. In doing so we have disregarded the carefully thought-out policies and practices that our Court usually follows before adopting any major change in the Rules of Criminal Procedure, including study by a select committee of the bench and bar, and public hearing before the Ken-

tucky Bar Association. We have bypassed the safeguards that would have been provided by study of these new procedures by professionals, and embraced in their stead the very forces of precipitous change that the new Judicial Article was designed to defuse.

It takes no visionary to foretell that the new sentencing procedure will (1) produce sentences that are, in many cases, unduly harsh and abusive, (2) fatally overload an already overcrowded prison system, and (3) exacerbate the problem of disparate sentencing. The impending calamity to our sentencing system (it will be no less) is not just likely, it is inevitable. It will take years of effort to correct the mischief we have done this day, if indeed correction will ever be possible. The Majority opines that we "reserve the right to correct in the future" any "abuses or injustices," but correction will come too little and too late for those who suffer in the meantime.

In this Dissenting Opinion I will confront some of these abuses and injustices, and some of the legal flaws, but certainly not all. There will be others that do not jump out at the reader of this statute as obviously as the ones I address. I will address these problems, not in the order of their importance, but in the same order as they come forward in the statutory language.

I.

"THE JURY SHALL RECOMMEND WHETHER THE SENTENCES SHALL BE SERVED CONCURRENTLY OR CONSECUTIVELY." KRS 532.055(2).

This statement conflicts with KRS 532.-110 and RCr 11.04. Presently the law places responsibility for deciding whether sentences should be served consecutively or concurrently with the judge. The power of the judge to decide the problem of consecutive or concurrent sentencing is an important tool available to the court to prevent disparate sentencing. It will be foreclosed, or at least significantly impaired, by the statutory change. The reason for

granting comity to the statute in this instance escapes me.

If the effect of this provision in practice proves out to be the effect obviously intended, producing consecutive sentencing, we can anticipate rapid acceleration of the overcrowding that has already occurred in our prisons. We can anticipate extended warehousing of nonviolent criminals. This problem will increase by geometric progression because of § 1 of the new "Truth-In-Sentencing" law, now codified as KRS 439.3401, which prescribes a future minimum parole eligibility of "at least fifty percent (50%) of the sentence imposed" for certain Class A and Class B felonies.

The time is long overdue for our General Assembly to dump our present unwieldy and unworkable parole system in favor of a new system of penalties which (1) provides for reasonable maximum sentencing limits in the first instance, (2) abolishes parole, and (3) requires those whom the judge does not probate to serve the sentence imposed.[1] It is the parole system more than anything else that has destroyed credibility and public confidence in criminal sentencing. But the Band-Aid approach adopted by the General Assembly will only continue to make matters worse. Of course, it is impossible to discuss the details of a proper sentencing system within the confines of this Dissent. It suffices to say that the changes wrought by the "Truth-In-Sentencing" law will undoubtedly make matters worse.

## II.

### THE COMMONWEALTH IS PERMITTED TO INTRODUCE EVIDENCE OF "MINIMUM PAROLE ELIGIBILITY." KRS 532.055(2)(a)(1).

What will the Commonwealth tell the jury about minimum parole eligibility? In our present sentencing system, at the point where a convicted offender is turned over to the Department of Corrections, the power to determine the period of incarceration passes completely to the Parole Board. KRS 439.340. This means that "an offender could conceivably be released from custody immediately after imposition of sentence." *See* Commentary to KRS 532.060. Although the Parole Board has promulgated an administrative regulation which establishes a schedule for parole eligibility, "[t]o this schedule, however, the board added the qualification that it could 'review the case of any inmate for parole consideration prior to his eligibility date if it appears advisable to do so.' *Kentucky Parole Board Reg.* DC–Rg–6(8). Thus, at least from a theoretical viewpoint, we [have] in Kentucky an indeterminate sentence with a maximum term that [is] fixed by the jury and no minimum term." Commentary to KRS 532.060. [Emphasis omitted].

There is no way to comprehensibly convey to the jury all of the conflicting possibilities that surround parole eligibility. It beggars the imagination to visualize the examination and cross-examination of the "experts" who will testify to provide this information. The prospect of confusion and "half-truths" is inevitable.

## III.

### THE COMMONWEALTH WILL BE PERMITTED TO INTRODUCE EVIDENCE REGARDING "PRIOR CONVICTIONS OF DEFENDANT, BOTH FELONY AND MISDEMEANOR." KRS 532.055(2)(a)(1).

Considering misdemeanors as well as felonies is a profound change, a dramatic step. Misdemeanors differ from felonies not only in punishment, but often in the nature of the crime. Many misdemeanors are only *mala prohibita* and not *malum in se*. Occasionally misdemeanors are pled to as a matter of convenience rather than an admission of guilt. Often safeguards applicable to a felony conviction are not utilized. In short, admitting evidence of this type, as with parole eligibility, has a great potential for producing "half-truths."

The new statute has no time limitation on use of a prior offense, felony or misdemeanor. It offers the trial court no discretion regarding admissibility. Thus convictions that are twenty years old, or more, that normally would be barred by the trial judge as irrelevant under present decisions

---

1. There would, of course, still need to be some provision for time off the sentence imposed for good behavior while in prison, to provide an incentive not to attack the guards.

regarding appropriate use of prior felony convictions for impeachment, are apparently admissible.

This piling up of prior convictions serves no purpose except to provide evidence that will be utilized by the jury to enhance the sentence. It will exacerbate the problems regarding extended warehousing of criminals referred to in Section I above.

Although this use parallels in some respects present use of prior convictions in a persistent felony offender hearing, KRS 532.080, the statute provides none of the safeguards that exist in the persistent felony statute, or in the decisions of our Court relating thereto. For instance, what about the right to challenge prior convictions as set out in *Commonwealth v. Gadd*, Ky., 665 S.W.2d 915 (1984)? What about the fact that this statute does not require a finding of fact concerning the existence of prior convictions, whereas the PFO statute does? What about the extraordinary time that must be expended if the right to pretrial discovery regarding prior convictions, felonies *and* misdemeanors, is to be safeguarded by inquiry regarding their validity?

## IV.

### THE COMMONWEALTH WILL BE PERMITTED TO OFFER EVIDENCE REGARDING THE "NATURE OF PRIOR OFFENSES." KRS 532.055(2)(a)(2).

The "nature of prior offenses" is a much broader term than present limitations applicable to the use of prior felonies in PFO proceedings. At present, evidence is limited to designating the offense involved, but *none* of the details of the nature of the prior offense are admitted. Evidence of the "nature" of a prior offense calls for reconsideration of the evidence from the previous case. We can expect nothing less than complete review because of subsection (2)(b) which permits the defendant to introduce "evidence which negates any evidence introduced by the Commonwealth." Thus, both sides will be indulged at length on the "nature" of a prior offense.

This evidence requirement in subsection (2)(b) generates a subsidiary issue of considerable consequence: is this limited only to evidence that directly contradicts the evidence offered by the Commonwealth regarding previous offenses, or does "negate" mean to "mitigate"? Is the defendant entitled to introduce any evidence available regarding his background, i.e., the social, psychological, employment, family, and other factors motivating his behavior which serve indirectly to offset or "negate" evidence of prior offenses? It is a rule of longstanding that a criminal statute subject to more than one interpretation must be interpreted in favor of the defendant. This is the "rule of lenity." *Roney v. Commonwealth*, Ky., 695 S.W.2d 863 (1985). Under this rule the defendant rightfully should be entitled to introduce any evidence of a "nature" tending to negate the effect of the evidence of prior convictions that has been introduced against him.

This is a sentencing hearing to determine punishment within the range provided by statute. It is a rule of constitutional magnitude that in such a hearing, once the door is open to extrinsic evidence, i.e., evidence in aggravation or mitigation other than proof relating to the crime for which he stands convicted, that the defendant has a right to go beyond evidence that simply contradicts the Commonwealth's evidence. *See Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). Unlike a PFO proceeding, wherein no evidence is introduced regarding the "nature" of the offense, in the expanded circumstances now presented any effort to limit the defendant's presentation of negating evidence, direct or indirect, has serious Due Process implications. *See Specht, supra.*

## V.

### THE COMMONWEALTH WILL BE PERMITTED TO INTRODUCE EVIDENCE REGARDING THE "MAXIMUM EXPIRATION OF SENTENCE AS DETERMINED BY THE DIVISION OF PROBATION AND PAROLE FOR ... CURRENT AND PRIOR OFFENSES." KRS 532.055(2)(a)(4).

As used in this proviso, the word "current" seemingly applies to the present of-

fense for which the defendant stands convicted. Under this proviso, and the one discussed above in Section II (evidence of minimum parole eligibility), using the pretext of comity, we have abandoned a long line of cases recognizing that it is prejudicial error to inform the jury about the possibility of parole. *See Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981); *Broyles v. Commonwealth*, Ky., 267 S.W.2d 73 (1954); *Boyle v. Commonwealth*, Ky.App., 694 S.W.2d 711 (1985); and cases cited therein:

"... the subject of parole is not to be given any consideration by them [the jury] in determining innocence, guilt, or punishment." *Boyle, supra* at 712.

Or, as stated in *Payne:*

"The consideration of future consequences such as ... parole have no place in the jury's finding of fact and may serve to distort it. For that reason we now hold that neither the prosecutor, defense counsel, nor the court may make any comment about the consequences of a particular verdict at any time during a criminal trial." 623 S.W.2d at 870.

We have substituted for this rule a new system in which consideration of the possibility of parole, uncertain as it is, will be central to imposing sentence. Although the time of release on parole is necessarily unknown and unknowable at the time of sentencing, we will introduce evidence that strongly suggests otherwise.

With a single hastily conceived stroke of the pen we will discard our previous jurisprudence to invite speculation about the possibility of parole as a central factor in the jury's yardstick to use in deciding an appropriate punishment. The legal reasoning underlying our previous decisions holding such evidence irrelevant, inflammatory, and prejudicially erroneous, is overturned without suitable explanation, and largely without comment. In its place we substitute a new approach based on half-truths and speculation.

As stated in 16 A.L.R.3d 1137, at p. 1141: "As to the sentence, the prejudice [from information about the 'possibility of parole'] operates by urging the jury to impose an excessive punishment in order to compensate for or protect against the action of the pardoning or paroling authority."

## VI.

"ALL HEARINGS HELD PURSUANT TO THIS SECTION SHALL BE COMBINED WITH ANY HEARING PROVIDED FOR BY KRS 532.080" (THE PERSISTENT FELONY OFFENDER HEARING.) KRS 532.055(3).

This scenario presents a variety of problems of insolvable complexity:

(a) As set out above, limitations on evidence admissible to prove previous convictions under the PFO statute are in direct conflict with the evidence regarding these previous felonies that will be permissible under the new statute:

(1) The "nature" of the prior conviction is not admissible in a PFO proceeding.

(2) Evidence regarding parole is not permissible in a PFO proceeding.

(3) The PFO statute requires a finding of fact by the jury that the proof is sufficient to establish the previous conviction(s).

(4) The PFO statute contemplates that a sentence must first be set for the underlying offense *before* any evidence is received regarding prior offenses.

(5) When a jury finds an accused guilty as a PFO but is unable to agree on the proper punishment, the judge may *not* impose the punishment. *Commonwealth v. Crooks*, Ky., 655 S.W.2d 475 (1983).

As a practical matter it is impossible to follow the statutes and decisions applicable to the PFO procedure and the provisions of the new statutes in a single proceeding, because they are in direct conflict.

b) The majority decision proposes that "the jury in the combined bifurcated hearing could be instructed to (1) fix a penalty on the basic charge in the indictment; (2) determine then whether the defendant is guilty as a persistent felony offender, and if so; (3) fix the enhanced penalty as a persistent felony offender." The practical

effect of this is inherently abusive. The jury hears, at the same time, evidence that is now permissible in setting a sentence for the underlying offense but which is improper for deciding (a) whether a person is guilty as a PFO, and (b) if so, the proper enhanced penalty as a PFO.

There is no practical way that the jury can compartmentalize this information so as to avoid prejudice in all three decisions: the penalty for the underlying offense, the determination of guilt as a PFO, and the enhanced penalty. The same evidence will be used over and over again with the result that the penalty for the underlying offense will be greater, the determination of guilt as a PFO offender will be prejudiced, and the enhanced penalty as a PFO will be further increased. The multiple enhancement effect of the suggested hearing is so fraught with prejudice that it should be considered fundamentally offensive to the concept of justice.

Our present system contemplates that a jury shall decide the punishment for the offense for which the defendant has been convicted on the basis of the evidence that relates to the nature of this offense. Even Gilbert and Sullivan's Mikado had sufficient inherent sense of justice to demand that "the punishment fit the crime." No person, however bad his past record, should receive a punishment greater than the punishment that fits the crime. Our present system contemplates that only *after* a jury has set a punishment that fits the crime, shall the jury hear evidence of previous offenses. The judge orders a Presentence Report providing information similar to that which will now be heard by the jury only *after* the jury has fixed the punishment, before imposing sentence, and then uses that Presentence Report only in deciding whether the sentence imposed should be probated or the punishment imposed should be mitigated. KRS 532.050; KRS 532.040; KRS 532.070.

> "The report shall be prepared and presented by a probation officer and shall include an analysis of the defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation, personal habits, and any other matters that the court directs to be included." KRS 532.050(2).

Either the present statute is intended as a substitute for our existing procedures, or it isn't. If it is, the jury will be deprived of much of the information that is presently included in a Presentence Report, and, indeed much of that information could not be presented in a form admissible under the rules of evidence. The concept that the jury will now do something beyond setting a punishment to fit the crime, which is inherent in the new method for jury sentencing established by KRS 532.055, is simply unworkable. If the defendant cannot present other evidence that may qualify him to leniency coextensive with the range of information provided by a Presentence Report, his rights have been seriously prejudiced. On the other hand, if the defendant is permitted to present other evidence that may qualify him for leniency, the proceedings will become so lengthy and complex as to destroy the system. The problems presented here are not imaginary, they are inherent in the present statutory scheme that we have embraced by way of comity.

In summary, under the new scheme the jury will use the same evidence to enhance punishment three times.

1) The extrinsic evidence of other offenses will be used by the jury in setting the original sentence, rather than, as is presently the case, limiting the evidence to that which relates to the crime for which the jury has convicted.

2) In deciding whether a defendant is guilty of being a persistent felony offender, evidence of "other offenses, felonies and misdemeanors," which would not be relevant to determining guilt as a PFO, will be presented to the jury to utilize in deciding that question.

3) This evidence of other offenses not involved in the PFO charge will also be utilized in fixing the enhanced penalty as a persistent felony offender.

Recently, in *Musselman v. Commonwealth,* Ky., 705 S.W.2d 476 (1986), a ma-

jority of our Court had the courage to invalidate on constitutional grounds a portion of the harassment statute, KRS 525.-070(1)(b). We stated that, "[a]s written the statute is unconstitutionally vague and overbroad," and "[w]e reject the argument that a criminal statute facially unconstitutional can be 'authoritatively construed' by the courts to render it constitutional ..." 705 S.W.2d at 477–78. We cited *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), holding that a "loitering statute was unconstitutionally vague on its face within the meaning of the Due Process Clause of the Fourteenth Amendment." 705 S.W.2d at 478. See also *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), holding that a statute allowing the death penalty upon proof that the murder was "outrageously or wantonly vile, horrible and inhuman," was void for vagueness.

However, I need not, and do not, rest the case against the present statute as unconstitutionally and impermissibly vague on these federal cases. The Bill of Rights in our Kentucky constitution, § 2, guarantees citizens of the State of Kentucky procedural due process, stating:

> "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

A statute calling for, nay demanding: (1) evidence speculating on the possibility of parole; (2) evidence regarding stale and archaic (and therefore irrelevant) prior convictions for "felonies and misdemeanors" and the "nature" thereof; and (3) a single combined sentencing hearing to consider both the initial sentence and the PFO phase, is an obvious and flagrant violation of our Bill of Rights, § 2. It is an exercise of arbitrary power and a denial of due process and it should have been struck down as such, much less enacted into law by our grant of comity when the General Assembly is admittedly powerless to mandate such judicial procedures.

We have legitimized the exercise of arbitrary power over the lives and liberty of freemen, which is expressly forbidden by § 2 of our Kentucky Constitution. As recently as *Kentucky Milk Marketing v. Kroger Co.*, Ky., 691 S.W.2d 893 (1985), our Court reaffirmed the power of "Section 2 of our Constitution" in these words:

> "Section 2 is broad enough to embrace the traditional concepts of both due process of law and equal protection of the law." *Id.* at 899.

In that case we held that "the Kentucky Milk Marketing law, on its face, and in its enforcement by the Commission ... is violative of Section 2 of the Kentucky Constitution." *Id.* I continue to subscribe to the rationale of the decision in the *Kentucky Milk Marketing* case, and I urge its application in the present circumstances.

Finally, the appellee, Reneer makes a sound argument to the effect that, in any event, the application of the new sentencing procedure to him would violate prohibitions against ex post facto laws found in Article I, Section 9 of the United States Constitution and in Section 19 of the Kentucky Constitution.

Reneer's alleged offense was committed before the effective date of the new statute. The new statute calls for important new evidence bearing on the question of sentencing, relating both to prior offenses (felonies and misdemeanors) and the subject of parole, all of which will be introduced by the prosecutor solely for the purpose of obtaining a more severe sentence, which evidence could not have been utilized against him before.

The question which is critical in determining whether there is an ex post facto violation is whether the statute will "aggravate any crime heretofore committed" or "provide a greater punishment therefor than was prescribed at the time of its commission." *Hopt v. Utah*, 110 U.S. 574, 589, 4 S.Ct. 202, 28 L.Ed. 262 (1884). There can be no question but that the evidence of past offenses that would have been introduced against Reneer under the new law would have adversely affected the assessment of punishment which Reneer would

have received for the underlying offense, had it been applied.[2]

In *Miller v. Florida*, 482 U.S. ——, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), Florida's newly enacted statutory sentencing guidelines were held unconstitutionally applied to an offense committed before the statute's effective date, in violation of the ex post facto clause of Article I of the Federal Constitution. The United States Supreme Court held that the revised guidelines law was "more onerous" than the law in effect at the time of the petitioner's crimes. *Miller v. Florida* cites an earlier United States Supreme Court decision in *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) to the effect that "[a] law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" *Miller*, 482 U.S. at ——, 107 S.Ct. at 2451, 96 L.Ed.2d at 360. That is specifically the intended result if and when the new sentencing procedure, and the new evidence that will be utilized under it, are applied in trial of crimes committed before the effective date of our new law.

The majority opinion cites *Murphy v. Commonwealth*, Ky., 652 S.W.2d 69 (1983) as authority against application of the ex post facto principle. However, the *Murphy* case is inapposite. The *Murphy* case did not involve introducing additional evidence adverse to the accused. The sole issue was whether the defendant was entitled to an instruction to the effect that he could not be convicted on the testimony of an accomplice unless supported by other substantial evidence tending to connect him to the commission of the offense. The record reflected substantial circumstantial evidence, albeit conflicting, that corroborated the accomplice's testimony which implicated Murphy. Unlike present circumstances, the *Murphy* case did not turn on the utilization of additional evidence, but on the strength of the evidence necessary to convict. The change abolishing the requirement of a so-called accomplice instruction was held merely procedural, and not subject to protection against ex post facto

rules. The law is that "if the change effected is merely procedural" and does not affect "any substantial right" the ex post facto clause is not implicated. *Kring v. Missouri*, 107 U.S. 221, 232, 2 S.Ct. 443, 452, 27 L.Ed. 506 (1883). In my judgment no one can justly say that the present law is merely procedural and without substantive effect.

In *People v. Ramos*, 37 Cal.3d 136, 207 Cal.Rptr. 800, 689 P.2d 430 (1984), at issue was a law requiring the trial court to instruct the jury in a capital murder case that one of the sentencing options, a sentence of life without possibility of parole, is subject to the Governor's power of commutation. In resolving the issue against constitutionality, based solely on state constitutional guarantees, the court states that the statute "is a classic example of a misleading 'half-truth.'" 689 P.2d at 440.

> "Viewed realistically and in context, the instruction provides the jury with seriously misleading information." *Id.*

The statute presently under consideration, KRS 532.055, presents problems far more serious than the problem in the *Ramos* case. It involves a piling up and a piling on of evidence of "half-truths." It invites the use of evidence that will necessarily be misleading and confusing. It invites the use of archaic convictions for both felonies and misdemeanors which are no longer relevant if they ever were. It introduces a new system combining in one sentencing hearing both initial sentencing for the underlying offense and conviction and sentence as a persistent felony offender, a system that will necessarily involve the improper and prejudicial overlapping multiple use of the same evidence for what should be separate purposes. The new statute is surely one that qualifies as a cure worse than the disease.

LAMBERT, J., joins in this dissent.

---

2. Reneer was found not guilty thereby eliminating the necessity for trial as a persistent felony offender, so we need not discuss applicability of

ex post facto prohibitions to this phase of his case.