RENDERED: MARCH 6, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1493-MR

ANDREW PIE                                                    APPELLANT

APPEAL FROM HICKMAN CIRCUIT COURT
v.         HONORABLE TIMOTHY A. LANGFORD, JUDGE
ACTION NO. 24-CR-00021

COMMONWEALTH OF KENTUCKY                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE: Andrew Pie (Pie) appeals his convictions for Second-Degree

Assault and First-Degree Wanton Endangerment after a jury trial. Pie argues he

was entitled to a directed verdict on both counts because the Commonwealth failed

to prove the victim of the assault suffered a "serious physical injury" or that the

victim of the wanton endangerment was subjected to "substantial danger of death

or serious physical injury." After a review of the record and the applicable law, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On April 18, 2024, Pie was living with his girlfriend, Alicia Bishop (Bishop), and their three-year-old child (Child). According to Bishop's testimony at trial, they were all at home in the early afternoon that day. Pie received some text messages, and immediately "became completely unhinged." Bishop told the jury that Pie grabbed her by her hair, threw her down, and pulled her around the house. At some point during this, Bishop hit her head against something. She testified Pie took her neck in his hands and pushed her face down into the carpet. Pie kicked her several times in her back while she was face down on the floor.

The home in which this occurred is a single-wide mobile home. Bishop referred to this home as a small trailer. Bishop explained she was sitting on the couch in the living room when Pie began attacking her. Child was present during this attack. The couch is against the wall next to Child's bedroom. Bishop stated that Child was not "right there" at the beginning but, had Child come any closer to her and Pie as Pie threw her about, Child could have gotten hurt.

Bishop stated she had her phone in her hand during the assault. When Pie let go of her, he took her phone, and she then ran outside. Bishop told the jury

that Pie then broke her phone and left the home. Bishop did not know where he went. She was unable to call for help.

No medical records or medical testimony was provided by either side. Bishop testified about her injuries. She stated the most pain she felt was from her ribs. She had trouble breathing because of the pain. Although her symptoms are perhaps consistent with bruised ribs,[1] Bishop did not have any fractures.

Bishop had bruises on her face, neck, and back. She had "rug burn" on her face. Bishop also had a preexisting abscess in a tooth, which was exacerbated by the attack. She testified that the pressure put on her mouth when Pie pressed her face into the floor made the abscess worse and pushed it more up into her mouth and toward her eye. She had necessary dental treatment after the attack, but she admitted that she would have had to deal with the abscess in any event.

Bishop testified she had a head injury. She stated she had a concussion, and her memory from that day was a little blurry even by the time of trial. She stated it took her about a week to recover from her physical injuries. Child was not injured during the altercation. Bishop stated Child did witness it, as Child has since made statements about the incident to Bishop. This indicates Child

---

[1] At the preliminary hearing, the officer explained that a diagnosis of bruised ribs had been made.

was close enough in this confined space at some points to see what Pie was doing to Child's mother.

Bishop's aunt, Christie Kimball (Kimball), also testified for the Commonwealth. Kimball owns the trailer where Bishop and Pie lived, and Kimball lives in a house on the same property. Kimball stated she received two telephone calls on April 18. The first was in the morning from Bishop. Kimball stated Bishop was crying and Pie was screaming in the background. Kimball went to check on Bishop during her lunch break, and, at that time, everything seemed fine.

But that afternoon, Kimball received a phone call from Pie, in which Pie told Kimball "your [racial slur] niece got exactly what she deserved." Kimball was afraid Pie had killed Bishop, so she left work to go to the home. When she arrived, Bishop and Child were outside in the driveway; Bishop was crying, and Child was "distraught." Bishop's face was discolored. Kimball called a family member to come to the home. The family member arrived with a deputy from the sheriff's department. EMS[2] was called, and they examined Bishop upon arrival. At their advice, Kimball then took Bishop to the hospital.

Deputy Dylan Jewell testified. He responded to the scene after he was flagged down by Kimball's family member. He took several photographs of

---

[2] Emergency Medical Services.

Bishop when he arrived. Four photographs were published to the jury. Deputy

Jewell stated Pie was not present when he arrived. Pie was arrested several days

later.

The jury trial occurred on September 23, 2024, during which the

preceding testimony was heard. After the Commonwealth had rested its case, Pie's

counsel moved for directed verdict on both charges. Pie argued the

Commonwealth did not prove that a "serious physical injury" was suffered by

Bishop, and therefore Pie could not be convicted of Second-Degree Assault.

A more general discussion occurred regarding the wanton

endangerment charge, but no specific element of the offense was referenced during

the motion for directed verdict. While the circuit court determined it was a "close

call" for both charges, it denied the motions, believing jury issues were presented.

The circuit court did advise it would include jury instructions for lesser included

offenses of Assault under Extreme Emotional Disturbance, Fourth-Degree

Assault, and Second-Degree Wanton Endangerment. The defense did not present

any testimony or other evidence.

The jury returned a verdict of guilty of Second-Degree Assault and

First-Degree Wanton Endangerment. After a brief penalty phase, the jury

recommended ten years for the assault conviction and three years for the wanton

endangerment conviction, to run consecutively for a total of thirteen years.[3] The circuit court sentenced Pie accordingly on October 17, 2024. Pie filed this appeal as a matter of right.

## STANDARD OF REVIEW

"On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). The circuit court is to grant a motion for directed verdict "only if the evidence, when construed in favor of the Commonwealth, could not induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 34–35 (Ky. 2011). "There must be evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution

---

[3] The discussion between counsel and the circuit court between the return of the guilty verdict and the sentencing phase was not recorded. The circuit court proceeded to have the jury access the penalties for the underlying crimes first before consideration of Pie's status as a persistent felony offender (PFO). This is erroneous. Kentucky Revised Statutes (KRS) 532.055(3) directs that PFO status charges **shall** be tried as part of a single sentencing phase. This statutory process has been criticized. *Commonwealth v. Reneer*, 734 S.W.2d 794 (Ky. 1987). But the statutory direction of **shall** does not give the trial court discretion in this matter. Even so, there typically would be no harmful or palpable error from this bifurcation of the penalty phase. Such a bifurcated process would most likely benefit defendants. When the jury in this case fixed the penalties at this first penalty phase, the Commonwealth decided it did not want to proceed against Pie with PFO enhancement through the second part of this bifurcated process. The Commonwealth dismissed the PFO charge without prejudice.

produces no more than a mere scintilla of evidence." *Id.* at 35 (citing *Benham*,

*supra*, at 187–88).

## ANALYSIS

### Second-Degree Assault

Pie first argues his conviction for Second-Degree Assault must be

reversed because there was no evidence presented that Bishop suffered a serious

physical injury.  This argument is preserved, as it was argued extensively in the

circuit court.

Second-Degree Assault is governed by KRS 508.020, and it states in

totality:

> (1) A person is guilty of assault in the second degree
> when:
>
>> (a) He intentionally causes serious physical injury
>> to another person; or
>>
>> (b) He intentionally causes physical injury to
>> another person by means of a deadly weapon or a
>> dangerous instrument;[4] or
>>
>> (c) He wantonly causes serious physical injury to
>> another person by means of a deadly weapon or a
>> dangerous instrument.
>
> (2) Assault in the second degree is a Class C felony.

---

[4] Parts of the human body such as Pie's hands and feet may be dangerous instruments but only when serious physical injury occurs.  KRS 500.080(3).  So, the key question for this case remains whether serious physical injury occurred.

The General Assembly has outlined definitions for the Kentucky Penal Code in KRS 500.080. Of potential relevance to this matter is KRS 500.080(19), which the Commonwealth discusses in its brief and which defines "serious physical injury" as "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, prolonged loss or impairment of the function of any bodily organ, or eye damage or visual impairment." This subsection of the statute then goes further to state: "For a child twelve (12) years of age or less at the time of the injury, or for any person if the relationship between the perpetrator and the victim meets the definition of a family member or member of an unmarried couple as defined in KRS 403.720, or a dating relationship as defined in KRS 456.010, a serious physical injury includes but is not limited to the following[,]" and then includes sixteen specific examples of injuries.

The Commonwealth, in their Appellee brief, references this latter subsection of the statute, as Pie and Bishop certainly have a "relationship between the perpetrator and the victim" being that of a "member of an unmarried couple." Subsection (a) of the statute references "bruising near the eyes, or on the head, neck, or lower back overlying the kidneys[.]" The injuries Bishop suffered in this action clearly meet this definition.

But this version of the statute did not go into effect until July 2024. Pie's actions occurred in April 2024. The previous version of the statute defining "serious physical injury" was KRS 500.080(18), and, in April 2024, it included these more specific injuries only if the victim was a child twelve years of age or less at the time of injury. The definition we must utilize in this action then is whether Bishop suffered "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, prolonged loss or impairment of the function of any bodily organ, or eye damage or visual impairment."

Bishop's injuries included bruising to her face, neck, and back, rug burns and scrapes to her face, a concussion, and an exacerbation of an abscess in her mouth with a description of this infection spreading because of Pie's actions. Bishop testified she had pain in her ribs that made it difficult to breathe, although she suffered no fractures. Her memory of the attack is still "blurry." Finally, she testified it took about a week to fully recover from the physical injuries.

The lingering effects of a concussion may constitute evidence of a serious physical injury. *See Arnold v. Commonwealth*, 192 S.W.3d 420, 427 (Ky. 2006). Pain alone is an impairment of health and if prolonged may constitute a serious physical injury. *Parson v. Commonwealth*, 144 S.W.3d 775, 787 (Ky. 2004), *overruled on other grounds by Shields v. Commonwealth*, 647 S.W.3d 144

-9-

(Ky. 2022). The statute has no definition of prolonged, and the cases applying the word give no clear delineation with respect to an amount of time. Even if one week of painful and labored breathing is not prolonged pain, the combined effect of Bishop's concussion and other injuries was sufficient to constitute a serious physical injury.

Whether "serious physical injury" has occurred is a question of fact for the jury. *See Rowe v. Commonwealth*, 50 S.W.3d 216, 221 (Ky. App. 2001). It is a mistake to think that a single injury must be shown to constitute serious physical injury. The statutory definition does not say "**a** serious physical injury." A combination of injuries can satisfy this element.

The circuit court properly instructed the jury on Second-Degree Assault, Assault under Extreme Emotional Disturbance, and Fourth-Degree Assault. The jury was given the proper statutory definitions. The jury heard all the testimony from Bishop. While the jury could have determined Bishop suffered only from "physical injury" rather than "serious physical injury," it determined based on the evidence it heard that Bishop had suffered serious physical injury.

"The evidence established injuries that fell somewhere in the gray area between mere physical injury and serious physical injury. The decision as to which type of injury actually occurred required close observation of the victims' behavior, attention to their testimony, and overall interpretation of the evidence.

-10-

That function could only be carried out by the jury, not the judge." *Swan v. Commonwealth*, 384 S.W.3d 77, 101 (Ky. 2012), *as corrected* (Sep. 11, 2012), *as modified on denial of reh'g* (Dec. 20, 2012). "Absent some legally compelling reason, we will not ignore the jury's finding and substitute our judgment in its place." *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 67 (Ky. 1996).

Pie argues there was no medical testimony to corroborate Bishop's injuries. While "medical testimony may be the preferred method of proving the serious physical injury requirement, lay testimony may be considered." *Brooks v. Commonwealth*, 114 S.W.3d 818, 824 (Ky. 2003). Medical testimony is "not an absolute requisite to establish serious physical injury[,]" and a victim is competent to testify about her own injuries. *Commonwealth v. Hocker*, 865 S.W.2d 323, 325 (Ky. 1993).

## First-Degree Wanton Endangerment

Pie next argues that his conviction for First-Degree Wanton Endangerment should be reversed. He claims the Commonwealth did not produce any evidence to show Child was in actual danger of death or serious physical injury. First-Degree Wanton Endangerment is governed by KRS 508.060, which states: "(1) A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he or she wantonly engages in conduct which creates a substantial danger of death

-11-

or serious physical injury to another person." In this case, the circuit court also instructed the jury on Second-Degree Wanton Endangerment, which applies when someone "engages in conduct which creates a substantial danger of physical injury to another person." KRS 508.070.

This issue was not properly preserved, as the Commonwealth has pointed out in its brief. "The defendant's motions for directed verdict must be specific about the particular charge the Commonwealth failed to prove, and state the specific element(s) of that charge the Commonwealth failed to prove." *Ray v. Commonwealth*, 611 S.W.3d 250, 257–58 (Ky. 2020). Pie's argument regarding the wanton endangerment charge was very general. While in chambers, Pie's counsel stated, "What Ms. Bishop testified was that the three-year-old wasn't hurt, that the three-year-old couldn't really have gotten hurt unless he got into the mix and that if he had gotten hurt, it would have been accidental on Mr. Pie's part."[5] This was the extent of Pie's directed verdict argument on the wanton endangerment charge.

"Insufficiently specific motions, such as moving summarily for a directed verdict or making a general assertion of insufficient evidence, are not enough to satisfy the specificity requirement." *Early v. Commonwealth*, 470 S.W.3d 729, 733 (Ky. 2015). Notably, Pie's Reply Brief does not contest the

---

[5] Video Record: 2024-09-23_11:50:20.483, 6:38–6:51.

Commonwealth's assertion that this issue was unpreserved, nor does the Reply brief ask that we review the issue for palpable error. "Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant." *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008), *as modified on denial of reh'g* (May 22, 2008). Because Pie failed to request palpable error review, he has waived this issue.

Nevertheless, we do not believe a palpable error occurred. "A palpable error is one resulting in 'manifest injustice,' i.e. a 'probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law.'" *Hunt v. Commonwealth*, 326 S.W.3d 437, 440 (Ky. 2010) (citing *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006)) (emphasis omitted). The jury heard evidence that a three-year-old child was in the same small, enclosed area in a trailer while Pie was kicking Bishop and pulling her around the trailer and screaming. It is not unreasonable to conclude that a small child may attempt to intervene or get close to his mother in such circumstances. An actual injury is not required for someone to be found guilty of wanton endangerment; it is conduct that creates a substantial danger of serious physical injury. Had Child moved in between Pie and Bishop during the assault or if Pie had misjudged distance as he

-13-

threw Bishop about the trailer, Child may very well have been seriously injured. No manifest injustice occurred.

## CONCLUSION

Pie was not entitled to a directed verdict on the Second-Degree Assault charge. He did not properly preserve his motion for directed verdict on the First-Degree Wanton Endangerment charge, and no palpable error occurred. We AFFIRM the Hickman Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Adam Meyer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney Geneal of Kentucky

Joseph Crawford White
Assistant Solicitor General
Frankfort, Kentucky