James Ricky OWENS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2009–SC–000511–MR.

Supreme Court of Kentucky.

Jan. 20, 2011.

V. Gene Lewter, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, William Bryan Jones, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, James Ricky Owens, was convicted by a Simpson Circuit Court jury of first-degree assault, tampering with physical evidence, and of being a first-degree persistent felony offender (PFO). For these crimes, Appellant received an enhanced sentence of thirty years' imprisonment for the first-degree assault conviction, based on the jury's contemporaneous finding that he was a first-degree PFO, and an enhanced sentence of ten years for the tampering with physical evidence conviction, based also on the first-degree PFO finding, with the two sentences to be served concurrently. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110.

Appellant asserts five arguments on appeal: 1) that the trial court erred by denying his motion for a directed verdict on the first-degree assault charge; 2) that the trial court erred by allowing the Commonwealth to amend the indictment to change the basis for the first-degree assault charge from intentional conduct to wanton conduct which led to improper jury instructions and lack of a unanimous verdict; 3) that the jury instruction for tampering with physical evidence failed to identify any specific item of evidence allegedly tampered with; 4) that the trial court erred by admitting into evidence during the penalty phase the fact that Appellant was previously convicted as a second-degree PFO; and 5) that the trial court erred in failing to give penalty phase jury instructions in accordance with *Commonwealth v. Reneer*, 734 S.W.2d 794 (Ky. 1987). For the reasons set forth herein, we affirm Appellant's conviction and sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

Thelma Sorrells was assaulted at her home in Franklin, Kentucky. Based on evidence collected by the police, Appellant was indicted by the Simpson County Grand Jury for one count of first-degree assault, one count of tampering with physical evidence, and one count of first-degree PFO.

At trial, Sorrells testified that on the night of the assault, August 25, 2007, Appellant knocked on her door around 9:30 p.m. and asked if they could talk. Sorrells recognized Appellant as a friend of her recently deceased husband, and she agreed. She testified that they sat outside on her patio where Appellant offered her one of the two beers he had brought with him. She declined. Appellant told Sorrells that he thought she was a "beautiful lady." Sorrells replied that she was still dealing with her husband's death and that she was not interested in him. Sorrells then said she needed to go inside the house to check on her dog. Her next memory was waking up at Vanderbilt Hospital having no idea of how or why she was there.

Sorrells remained in Vanderbilt Hospital for several days. She then went to live with her son. Sorrells testified that as a result of the assault she experienced leg pain, dizzy spells, vision problems, and was unable to walk without holding on to items for support. Because of the injuries, she was unable to return to work for two or three months. Sorrells testified that at the time of the trial she had a scar on the back of her head, persistent weakness in her arms, and that her lost memories of that night had not returned.

Dr. Robert Wesley was working at the Franklin Emergency Center the night of the assault and treated Sorrells. He testified that her condition was critical and that she had respiratory problems. She had bruising around her eyes and a skull fracture. Dr. Wesley said he could feel Sorrells's brain in the rear of her head and suspected she was experiencing potentially fatal brain swelling. Dr. Wesley testified that he did not believe Sorrells would survive.

Sorrells likely would not have survived if not for the fact that someone saw the altercation and called the police. Franklin Police Officer Benjamin Brown testified that he was dispatched to Sorrells's house on August 25, 2007, around 10:30 p.m. Upon arriving he saw a white male lift a female (Sorrells) up in the air and slam her down against the ground twice. As the man lifted the woman in the air a third time, Officer Brown called out to the suspect identifying himself as a police officer. The man then dropped the woman and ran

off. Officer Brown gave chase to the suspect through some heavy brush but could not catch him. Officer Brown described the suspect as a white male, with blond hair, wearing a white t-shirt and jeans.

Franklin Police Officer Justin Toth arrived at Sorrells's house soon after Officer Brown and also began to chase the suspect. Officer Toth later saw the suspect at a nearby house, near a swimming pool, dripping wet and wearing only underwear. He arrested the suspect, who later was identified as Appellant. Officer Toth testified that Appellant was intoxicated when arrested. Officer Brown arrived at the scene of the arrest and saw scratches on Appellant's legs and arms consistent with running through heavy brush. However, another witness at trial testified that Appellant received the scratches earlier that day.

Franklin Police Officer Ben Harper testified that the day after the assault he found a gray t-shirt between a driveway and a hedge at a property near Sorrells's home. The t-shirt was turned inside out and appeared to have blood on the sleeve. Testing conducted by the Kentucky State Police Crime Laboratory linked DNA from the t-shirt to both Appellant and Sorrells.

Franklin Police Captain Dallas Wiles processed the crime scene. There he found a wallet containing Appellant's social security card and driver's license, a hat that Appellant admitted to owning, and two beer cans. Captain Wiles stated that Appellant was Mirandized and gave a writ-ten statement in which he admitted to being at Sorrells's house the night of the assault, but denied assaulting her. Appellant stated that he left the patio to use the bathroom, and as he returned, he heard someone talking to Sorrells. He then left Sorrells's house and went to his cousin's house, where he was found by police and taken into custody.

The jury convicted Appellant of first-degree assault, tampering with physical evidence, and of being a first-degree PFO, and sentenced him to a total of thirty years' imprisonment. This appeal followed.

## I. THE TRIAL COURT CORRECTLY DENIED APPELLANT'S MOTION FOR A DIRECTED VERDICT ON THE FIRST–DEGREE ASSAULT CHARGE

■ Appellant first argues that the trial court erred by denying his motion for a directed verdict on the first-degree assault charge. The Simpson County Grand Jury indicted Appellant for first-degree assault under the theory that he acted intentionally.[1] On the first day of trial, the Commonwealth made a motion to amend the Indictment to charge Appellant with committing first-degree assault wantonly instead of intentionally. The trial court granted the motion.[2] The jury was ultimately instructed on first-degree assault committed through wanton conduct, KRS 508.010(1)(b), but not first-degree assault

---

1. Appellant correctly points out that the Indictment incorrectly merged the elements of first-degree assault committed under KRS 508.010(1)(a) (acting intentionally) with first-degree assault committed under KRS 508.010(1)(b) (acting wantonly). However, any harm due to this error was cured by the Commonwealth's amendment on the first day of trial.

2. Appellant argues that the Commonwealth's motion to amend the Indictment incorrectly stated that first-degree assault by wanton conduct is a lesser-included mental state of intent to first-degree assault by intentional conduct. While Appellant is correct that "wantonness" is not a lesser-included mental state to "intentional" under first-degree assault, the Commonwealth's error in so describing it was not prejudicial to Appellant.

committed through intentional conduct, KRS 508.010(1)(a). KRS 508.010(1) states:

(1) A person is guilty of assault in the first degree when:

(a) He intentionally causes serious physical injury to another person by means of a deadly weapon or dangerous instrument; or

(b) Under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person.

 We will review the trial court's ruling on Appellant's motion for a directed verdict using the standard outlined in *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991):

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

Appellant argues that he was entitled to a directed verdict on the first-degree assault charge because the evidence presented at trial established only an intentional assault, not a wanton assault. Appellant bases this argument on Officer Brown's testimony that the assailant lifted Sorrells into the air several times and slammed her to the ground. Appellant argues that Officer Brown's testimony made it unreasonable for a juror to believe that the assailant's conduct was anything other than intentional because the repeated action indicated an intent to harm Sorrells. *See Boulder v. Commonwealth*, 610 S.W.2d 615 (Ky.1980) (overruled on other grounds by *Dale v. Commonwealth*, 715 S.W.2d 227 (Ky.1986)) (holding that a defendant who shot his victim five times in the back acted intentionally and thus it was error to provide a jury instruction based on wanton conduct). Thus, Appellant argues that a juror could not have reasonably believed he was guilty of first-degree assault committed wantonly and he was therefore entitled to a directed verdict on that charge. We disagree.

KRS 501.020(3) defines wantonly as follows:

A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. *A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.*

(emphasis added). This definition was provided to the jury as Instruction No. 7.

Sufficient evidence was presented to support a reasonable juror's belief that Appellant was intoxicated and therefore acted wantonly while assaulting Sorrells. This evidence included testimony that Appellant drank beer while talking with Sor-

rells, beer cans found at the crime scene, the arresting police officer's testimony that Appellant was drunk when arrested and was charged with alcohol intoxication, as well as Appellant's own statement that he did not think he assaulted Sorrells, but if "I done it, I don't remember it." Further, sufficient evidence was presented to place Appellant at the scene of the assault, including his wallet which was found at the crime scene and his own admission he visited with Sorrells. Based on this evidence a reasonable juror could conclude that Appellant was voluntarily intoxicated at the time of the assault and acted in a manner which created a substantial and unjustifiable risk of serious physical injury to Sorrells.

Thus, reviewing "the evidence as a whole," we cannot say "it would be clearly unreasonable for a jury to find guilt" on the first-degree assault charge based on wanton conduct and the trial court correctly denied Appellant's motion for a directed verdict. *Benham*, 816 S.W.2d at 187.

## II. THE AMENDMENT OF THE IN-DICTMENT PRIOR TO THE START OF TRIAL WAS NOT ERROR

Appellant next argues a series of errors occurred due to the Commonwealth's amendment of the indictment at the start of trial. We will review each one of these allegations in the order they are argued.

### A. *The Amendment of the Indictment was Proper*

■ Appellant first argues that the trial court erred by allowing the Commonwealth to amend the indictment for first-degree assault the morning of the first day of trial. The amendment changed the mental state for the first-degree assault charge from "intentionally" to "wantonly." Appellant did not object to the amendment. In fact, Appellant's counsel assent-

ed to the amendment. Nevertheless, Appellant requests that we review this for palpable error. RCr 10.26.

RCr 6.16 states:

The court may permit an indictment, information, complaint, or citation to be amended at any time before the verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced. If justice requires, however, the court shall grant the defendant a continuance when such an amendment is permitted.

The amendment of the indictment satisfies RCr 6.16 because it was made before the trial began and did not charge Appellant with a new or different offense. Appellant had ample notice of the nature of the assault charge to prepare and present an effective defense. *See Basham v. Commonwealth*, 703 S.W.2d 480 (Ky.App.1985) (holding that an indictment which was amended to include the element of intent at the close of the Commonwealth's case was not prejudicial to the defendant). The appropriate relief when "justice requires" is a continuance, which Appellant never requested. RCr 6.16. We discern no prejudice arising out the amendment. There is no error here.

### B. *The Jury Instruct ion for First-Degree Assault Committed Due to Wanton Conduct was Proper*

Appellant next argues that the jury instruction on first-degree assault committed wantonly was error because a conviction on that offense was unsupported by the evidence. However, as we stated in Part I, *supra*, the evidence was sufficient to support a conviction for first-degree assault, and hence the giving of a jury instruction was proper.

### C. *The Jury Verdict on First–Degree Assault was Unanimous*

 Appellant next argues that the evidence presented by the Commonwealth on the first-degree assault charge might induce some jurors to believe that Sorrells's injuries were inflicted intentionally, while other jurors might believe they were inflicted wantonly, and therefore the possibility of a non-unanimous verdict has arisen. Appellant argues that there is no way we could know what *mens rea* the jury believed he acted with because there was no instruction on first-degree assault committed intentionally. This argument has no merit. The instruction on first-degree assault did not present any alternative theories of criminal responsibility to create a risk of non-unanimity. The jury is presumed to follow any instruction given to them. *Johnson v. Commonwealth,* 105 S.W.3d 430, 436 (Ky.2003). We must presume that any juror not satisfied beyond a reasonable doubt that Appellant was guilty under the instruction would have so voted. The single theory of liability contained in the assault instruction allowed for no unanimity concern. We perceive no error in the instruction.

### D. *The Failure to Provide a Second–Degree Assault Committed Intentionally Instruction Was Not Error*

 Appellant next argues that he was entitled to receive a jury instruction for second-degree assault committed intentionally under KRS 508.020(1)(a). This alleged error was not preserved, so we review for palpable error. RCr 10.26. Again, Appellant argues that the evidence presented by the Commonwealth proved that any assault committed against Sorrells was committed intentionally. Thus, he argues that had the jury been instructed on second-degree assault committed intentionally, the jury would not have found him guilty of first-degree assault committed wantonly.

However, Appellant did receive a jury instruction on second-degree assault committed wantonly under KRS 508.020(1)(c) and that instruction was supported by the evidence. Appellant fails to demonstrate that another jury instruction on second-degree assault would have aided him. Had the jury not believed the assault against Sorrells was committed wantonly, it would have acquitted Appellant of the assault. An additional instruction on intentional assault would have worked to his detriment because it would have given the jury an alternative basis under which to convict him, if it did not believe he acted wantonly. There is no error here.

### III. *THE ERRONEOUS JURY INSTRUCTION ON TAMPERING WITH PHYSICAL EVIDENCE WAS NOT PALPABLE ERROR*

 Appellant next argues that the jury instruction for tampering with physical evidence was prejudicially deficient because it failed to describe any specific item or items of physical evidence that he allegedly either concealed or destroyed. He contends that this deficiency enabled the jury to speculate about what may be "evidence," and to convict upon insufficient evidence. Appellant argues that he preserved the alleged instructional error by moving for a directed verdict at the close of the evidence and arguing that the Commonwealth had failed to introduce sufficient proof of what the tampering charge referred to. We do not regard that motion as sufficient to call the trial court's attention to the error Appellant now perceives in the instructions. RCr 9.54 provides:

> No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial

judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

Because Appellant failed to specifically object to the instruction at trial, and failed to offer an instruction or motion indicating with particularity his objection to the tampering instruction sufficient to inform the court of his concern, we regard the issue as unpreserved, and review this matter for palpable error. RCr 10.26.

■■■■ The tampering with physical evidence instruction given in this case was erroneous. The jury was instructed on the tampering with physical evidence charge as follows:

> Under Count Two of the indictment, you will find [Appellant] guilty of Tampering with Physical Evidence under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in Simpson County, Kentucky on or about August 25, 2007, and before the finding of the Indictment herein, [Appellant] *concealed and/or destroyed evidence* which he believed was about to be produced or used in an official proceeding;
>
> AND

B. That he did so with the intent to impair its availability in an official proceeding. (Emphasis added.)

As is readily apparent, the instruction provided did not specify for the jury what they must consider as the "evidence" that was concealed or destroyed.[3] By way of comparison, Cooper, *Kentucky Instructions to Juries*, § 7.63 provides the following model jury instruction for tampering with physical evidence:

> You will find the Defendant guilty of Tampering with Physical Evidence under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about _____ (date) and before the finding of the Indictment herein, he [altered] [destroyed] [concealed] [removed] _____ (ID evidence) which he believed was about to be produced or used in _____ (ID proceeding);
>
> AND
>
> B. That he did so with the intent to impair its [accuracy] [availability in the proceeding].

We find no fault with this model instruction and commend its use. It requires, as it should, identification of the particular item or items which, according to the proof, would qualify as physical evidence supporting the charge.[4]

---

3. KRS 524.100 criminalizes the tampering with "physical evidence," not "evidence." Given that the evidence at trial on this charge dealt only with items that clearly meet the definition of "physical evidence" contained in KRS 524.010(6), the reference to "evidence" instead of "physical evidence" would alone not be prejudicial.

4. We do, however, find fault in the Comment accompanying Cooper's model instruction, § 7.63, wherein it advises "if factual issues exist [about whether the item alleged qualifies as 'physical evidence' under the statutory def-

inition] substitute the phrase 'physical evidence' in place of the specific item in question and supply the statutory definition of 'physical evidence.'" In the unusual circumstance that a question of fact arises about whether an item is "physical evidence," the instruction should still identify the item in question, and simply add an element to the above model instruction that requires the jury to determine if that item is "any article, object, document, record, or other thing of physical substance." KRS 524.010(6).

In *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 229 (Ky.2005) we reiterated our long-standing philosophy:

> The basic function of instructions in Kentucky is to tell the jury what it must believe from the evidence in order to resolve each dispositive factual issue in favor of the party who bears the burden of proof on that issue. In other jurisdictions, as at common law, it may be appropriate to say that the purpose of instructions is to advise the jury on the law of the case, but not in this state.

 The mere reference in the instructions given here to "evidence," without identifying the particular items about which evidence was presented, was not adequate to fully inform the jury what it must believe in order return a verdict. The instructions, therefore, do not adequately constrain the jury's verdict to items meeting the statutory definition of "physical evidence," [5] and about which sufficient proof was presented to support a verdict. However, while we recognize that an erroneous jury instruction is presumed to be prejudicial, *Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky.2008), our review of this matter compels the conclusion that the error affected no substantial rights of Appellant and resulted in no manifest injustice. RCr 10.26.

Ample evidence was presented to the jury to support a finding of guilt on the tampering charge based on the concealed t-shirt, and the missing pants and shoes. The jury could quite reasonably believe that Appellant hid his t-shirt (albeit poorly) by throwing it in a neighboring yard, and otherwise adequately hid or destroyed the pants and shoes, which Officer Toth testified Appellant wore as he assaulted Sorrells. We find nothing in the record to reasonably support the suggestion that the jury considered anything other than the above mentioned items as it determined whether Appellant had concealed or destroyed evidence.

At the close of the evidence, Appellant moved for a directed verdict, claiming that the proof was not sufficient to establish that Appellant had concealed or destroyed anything. In overruling his motion, the trial court noted that the evidence sufficiently supported the theory that, in an attempt to conceal his shirt, Appellant discarded it in a neighboring yard as he left the crime scene. Appellant now concedes that the evidence was sufficient to support a conviction for tampering with physical evidence consisting of his shoes and his pants. The Commonwealth submits that there is no mystery about what "evidence" was tampered with, stating, "the only such evidence was the Appellant's clothes," which we take to mean collectively as Appellant's t-shirt, pants, and shoes.

Appellant suggests further that the failure of the instructions to reference specific items of evidence fostered the possibility of a non-unanimous verdict, in that some jurors may have voted to convict based on different items of evidence. That argument, too, is unpreserved. In recognizing that the proof presented at trial was sufficient to sustain Appellant's conviction based upon any or all of the clothing items involved, we reiterate our conclusion that the instructions, while defective, affected no substantial rights of Appellant and resulted in no manifest injustice. RCr 10.26.

IV. *THE INTRODUCTION OF APPELLANT'S PRIOR PERSISTENT FELONY OFFENDER STATUS INTO THE PENALTY PHASE OF TRIAL WAS HARMLESS ERROR*

 Appellant next argues that the introduction of his prior status as a sec-

---

5. The statutory definition of "physical evidence" is found in KRS 524.010(6).

ond-degree PFO into evidence during the penalty phase was error. During the penalty phase, a deputy circuit court clerk testified that Appellant had previously been convicted of theft by unlawful taking "as a persistent felony offender, second degree" and possession of anhydrous ammonia "as a persistent felony offender, second degree." Appellant's objection to the reference to his prior PFO status was overruled. The PFO jury instruction ultimately stated that, to find Appellant to be a first-degree PFO, the jury must believe that Appellant was previously convicted of *"knowingly possessing anhydrous ammonia, committed as a persistent felony offender, second-degree"* and *"theft by unlawful taking, committed as a persistent felony offender, second-degree."* He now argues that the admission into evidence of the reference to his prior second-degree PFO status, and its inclusion in the jury instructions violated due process.

> A persistent felony offender in the first degree is a person who is more than twenty-one years of age and who stands convicted of a felony after having been convicted of two or more felonies, or one or more felony sex crimes against a minor as defined in KRS 17.500, and now stands convicted of any one or more felonies.

KRS 532.080(3) (emphasis added). "Conviction as a persistent felony offender is not a charge of an independent criminal offense but rather a particular criminal status ... Persistent Felony Offender proceedings involves the status of the offender and the length of the punishment, not a separate or independent criminal offense." *White v. Commonwealth,* 770 S.W.2d 222, 224 (Ky.1989). Both parties acknowledge that we have no reported case law holding that the inclusion of a defendant's prior PFO status in a jury instruction or in the penalty phase hearing is error.

We first address the evidentiary question. KRS 532.055(2)(a), part of the "Truth In Sentencing" legislation that established our bifurcated method of trying felony cases, provides that in the sentencing phase of the trial "evidence may be offered by the Commonwealth relevant to sentencing including: ... (2) The nature of prior offenses for which he was convicted." As established in *White,* a prior PFO conviction is not itself a "prior offense." In *Robinson v. Commonwealth,* 926 S.W.2d 853, 855 (Ky.1996), we held "all that is admissible [under KRS 532.055(2)(a) ] as to the nature of a prior conviction is a general description of the crime. In this case, it would be sufficient to introduce the judgment with testimony that defendant assaulted the woman with whom he had been living." However, in *Cuzick v. Commonwealth,* 276 S.W.3d 260, 264 (Ky.2009), we cautiously held, consistent with *Robinson,* that the Commonwealth could read into evidence from the arrest record prepared by the arresting officer on the prior charge, a "description of the nature of the prior offense [that] was limited solely to the information contained on the citation, namely that Appellant utilized a bat to commit the breaking aspect of the burglary." The dissenting opinion in *Cuzick* reminded us that "[i]n *Robinson* this Court noted that the purpose of truth in sentencing in regard to a[PFO] conviction was simply to inform the jury that the defendant had prior convictions, and what their general nature was, *so that the jury could determine whether the defendant had the status of a persistent felon." Id.* at 269 (J. Noble, concurring in part, dissenting in part) (emphasis added).

The concern voiced in *Robinson,* and echoed in the *Cuzick* dissent, was that an expansive interpretation of phrase "the nature of the prior offense" might lead to protracted and potentially prejudicial "re-

trying" of contested details of the prior crime during the penalty phase of the later crime, especially if the "general description" of the prior offense included disputed gruesome or heinous details of the prior offense. Appellant's previous second-degree PFO status is not an aspect of the earlier crime that would lend itself to such controversy. Moreover, if not a part of the prior criminal act itself, it is an aspect of the "nature of the prior offense" that informs the jury's determination on the first-degree PFO issue and the appropriate penalty. We therefore conclude that the limited reference to Appellant's previous PFO status, presented to the jury simply as part of the descriptive name of his prior felony offense, did not violate the evidentiary restriction of KRS 532.055, and hence it did not violate his due process right to a fair trial.

 With respect to the PFO instruction, we simply state that requiring the prior offenses to have been "committed as a persistent felony offender, second-degree" is an incorrect statement of law, and is error. Whether Appellant had PFO status at the time of those convictions is immaterial to the first-degree PFO charge. However, we see no likelihood the error affected the jury verdict or substantially swayed the jury. It was, therefore, harmless and affords Appellant no grounds for relief. *See Winstead v. Commonwealth,* 283 S.W.3d 678, 688–689.

## V. THE PENALTY PHASE INSTRUCTION PROCESS DID NOT DENY APPELLANT DUE PROCESS

 Lastly, Appellant argues that he was denied due process by the trial court's failure to follow *Reneer,* 734 S.W.2d 794, regarding the penalty phase PFO sentencing instructions. Appellant failed to object to the trial court's penalty phase

procedure, and he requests palpable error review. RCr 10.26. *Reneer* states:

> If the accused is also charged as a persistent felony offender, the penalty phase and a persistent felony offender phase can be combined and the jury in the combined bifurcated hearing could be instructed to (1) fix a penalty on the basic charge in the indictment; (2) determine then whether the defendant is guilty as a persistent felony offender, and if so; (3) fix the enhanced penalty as a persistent felony offender.

*Id.* at 798. We stated in *Sanders v. Commonwealth,* 301 S.W.3d 497, 500 (Ky.2010) that the process suggested by *Reneer* is the "better practice" for trial courts to follow during the penalty phase.

In the present matter, the trial court did not instruct the jury to fix a punishment for the underlying felonies before determining Appellant's guilt as a PFO. Instead the jury found Appellant guilty of being a PFO, then set an enhanced sentence for the underlying felony convictions based on the PFO status. No sentence was fixed for the underlying offense, thus, Appellant correctly asserts that *Reneer* was not followed.

While we continue to cite *Reneer* as the required practice for trial courts to follow for PFO sentencing, we have not yet held that the failure to do so is palpable error. *See Miller v. Commonwealth,* 283 S.W.3d 690, 704 (Ky.2009) (holding that the failure to instruct according to *Reneer* is a procedural issue which we need not review without a contemporaneous objection). We also note that in *Montgomery v. Commonwealth,* 819 S.W.2d 713 (Ky.1991), we stated that a jury's failure to set a penalty for the underlying offense before finding PFO status does not violate the provisions of the PFO statute. Nonetheless we strongly encourage trial courts to follow the *Reneer* procedure, and while the failure to do

so here is not palpable error, such may not always be the case.

### CONCLUSION

Thus, for the foregoing reasons, Appellant's convictions and sentences are affirmed.

All sitting. All concur.