RENDERED:  JUNE 2, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0910-MR

ADAM LLOYD GRUBB                                        APPELLANT


APPEAL FROM KNOX CIRCUIT COURT
v.          HONORABLE MICHAEL O. CAPERTON, JUDGE
ACTION NO. 21-CR-00148


COMMONWEALTH OF KENTUCKY                                APPELLEE



OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; KAREM AND McNEILL, JUDGES.

KAREM, JUDGE:  Adam Lloyd Grubb appeals from a Knox Circuit Court

judgment and sentence after a jury convicted him of trafficking in a controlled

substance, first degree, first offense; operating a motor vehicle under the influence

of intoxicants, first offense; possession of drug paraphernalia; failure to wear a

seatbelt; and being a persistent felony offender in the second degree.  He was

sentenced to fifteen years in prison.  After careful review, we affirm the judgment in all respects but the sentence.  We reverse the part of the judgment imposing sentence and remand solely for a new sentencing hearing in accordance with the framework set forth in *Commonwealth v. Reneer*, 734 S.W.2d 794, 798 (Ky. 1987).

## FACTUAL AND PROCEDURAL BACKGROUND

Grubb testified at his trial that he was at home with his three sons when his cousin, Tammy Sparks, accompanied by an unidentified man, arrived at his house at approximately 1:00 o'clock in the morning.  Sparks asked Grubb to drive them home.  On the way, she changed her mind and asked to be dropped off at the T-Mart.  After Grubb left Sparks and the man at the T-Mart, he noticed that a makeup bag and small black zip-top pouch had been left behind in his car.  Grubb claimed to be worried about their contents because he knew his cousin once had marijuana in the black container and he did not want to leave the items in his car where his children might find them.  He stuck the zip-top container under the steering wheel and placed the other on the floor by the door.  After driving out of the T-Mart, he was pulled over by Officer Karl Middleton.

Middleton testified that he observed a Ford Mustang leave the T-Mart without signaling.  When he checked its license plate number, the registration indicated the vehicle should be a Toyota Camry.  Middleton stopped the Mustang and observed that Grubb was not wearing a seatbelt, had bloodshot eyes, and could

not control the movements of his body.  Middleton ordered Grubb out of the car and conducted standard field sobriety tests.  Middleton described Grubb as displaying horizontal gaze nystagmus, a sign of stimulant usage, and testified that he stumbled when performing the other tests.

Grubb testified that his restless behavior was due to Graves' Disease, which causes him to be jittery due to a high heart rate.  Middleton testified on rebuttal that Grubb did not inform him that he suffers from Graves' Disease.  Grubb also testified that he did not fail the field sobriety tests administered by Middleton.

Middleton asked if he could search the vehicle and Grubb initially refused.  Their accounts of what occurred afterwards differ.  Middleton testified that he had probable cause to perform a search after he spotted a glass smoking pipe of the type used for methamphetamine, sticking out of a yellow box in the driver's side door panel of the car.  Grubb testified Middleton told him he would call in a police dog if he did not consent to a search.  In any event, Grubb consented to a search.  Middleton found a black zip-top container attached under the driver's side of the dashboard with double-sided tape.  It held five small individual baggies containing a white crystal-like substance Middleton suspected was methamphetamine.  The baggies had individual stickers affixed to them, which

Middleton testified was very unusual. A cut snorting straw with residue on it was stored with the baggies.

Middleton testified that the street value of a gram of methamphetamine was $70. He thought each baggie contained a "teen" of methamphetamine and that the stickers on the baggies indicated the weight of the drugs inside. He explained that a "teen" or "teenager" of methamphetamine was 8/10ths of a gram. He testified that in his training and experience, the way in which the methamphetamine was packaged was indicative of trafficking because the baggies were "consistent with the same weight and they are each individually bagged for distribution." Middleton acknowledged that a straw such as the one recovered can be used to ingest the drugs but also stated that a seller can use his own product. He testified, based on his experience of dealers and addicts, that addicts do not normally stockpile their drugs, but use them right away.

On cross-examination he admitted that his search of the vehicle did not yield any large sums of money, scales, ledgers of drug sales, or weapons. He also admitted he had not received a tip regarding drug trafficking and did not witness any activity which he believed to be a sale of drugs.

The trial court asked Middleton if 0.8 grams was considered a dose, and Middleton answered that it was not. He explained that most users would use a tenth of a gram to pull up in a syringe or to smoke. Some people would use the

drug multiple times throughout the day, to keep a consistent high. Middleton also told the judge that a user would employ their own scales to weigh out a dose from a "teen."

Jamie Hibbard, the state's forensic science specialist, testified that the contents of the five baggies weighed a total of 2.374 grams. Each baggie contained a different quantity, with three baggies containing amounts greater than half a gram and two containing less than half a gram.

Grubb was charged with trafficking in a controlled substance in the first degree, first offense, two grams or more of methamphetamine; operating a motor vehicle while under the influence of intoxicants, first offense; possession of drug paraphernalia; failure to wear a seat belt; and being a persistent felony offender in the second degree.

The jury found Grubb guilty of the first four charges. During the penalty phase, the Commonwealth presented evidence that Grubb had one prior felony conviction for possession of a controlled substance. The jury found that Grubb was a persistent felony offender in the second degree and recommended an enhanced total sentence of fifteen years. The trial court sentenced Grubb in accordance with the jury's recommendation. This appeal followed. Further facts will be set forth below as necessary.

## ANALYSIS

**i. The trial court did not err in denying Grubb's motion for a directed verdict on the charge of first-degree trafficking in a controlled substance**

Grubb argues that he was entitled to a directed verdict on the trafficking charge because the Commonwealth presented insufficient evidence of intent to traffic. In moving for a directed verdict, defense counsel argued that in most of the trafficking cases he had previously handled, the amount of drugs had been greater and other indicia of trafficking had been present, such as cash, extra baggies, scales, weapons, or ledgers. He further argued that the charge of driving under the influence laid against Grubb supported the theory that he possessed the drugs for his own use only.

The trial court stated, with the Commonwealth's support, that there was a statutory presumption of trafficking if the contraband recovered was over a certain amount. As to the absence of other indicia of trafficking, the trial court stated that the jury could reasonably infer that Grubb was the distributor of the methamphetamine and had not yet made a drop to pick up the cash from the sale of his product. The trial court concluded that there was enough evidence to send the charge to the jury and it denied the motion for a directed verdict.

"On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v.*

*Benham*, 816 S.W.2d 186, 187 (Ky. 1991). "[T]he Commonwealth may prove its case through either direct or circumstantial evidence, and a jury may make reasonable inferences from circumstantial evidence." *McGuire v. Commonwealth*, 595 S.W.3d 90, 96-97 (Ky. 2019) (citations omitted).

Grubb argues that the trial court's denial of his motion for a directed verdict on the trafficking charge must be reversed because it was premised on an erroneous belief that there is a statutory presumption that an individual is guilty of trafficking if he possesses more than a certain amount of methamphetamine.

The trial court's reason for denying the motion for a directed verdict is not dispositive, however, because "an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009).

Grubb argues that the only evidence that he possessed the methamphetamine for the purposes of trafficking, as opposed to personal use, was the fact it was packaged in five individual baggies with stickers on them. Grubb contends that Middleton's testimony that the presence of stickers on the baggies was very unusual undermines the theory that his training or experience led him to believe they were indicia of trafficking. Grubb contrasts the facts of his case with those found in *McGuire*, *supra*. The evidence used to support McGuire's conviction for trafficking consisted of two baggies, one containing 2.623 grams of

methamphetamine and the other marijuana, eight unused baggies, and cash in small denominations. *McGuire*, 595 S.W.3d at 93. At trial, the arresting officer testified that the amount of methamphetamine recovered was consistent with trafficking and that persons who possess methamphetamine for personal use would also usually have an item such as a needle or spoon with which to ingest it. *Id.* The Kentucky Supreme Court held that the evidence was sufficient to support McGuire's conviction. *Id.* at 98.

Grubb argues that, by contrast, he possessed a smaller amount of methamphetamine than McGuire, had no small bills and possessed a cut straw with residue which indicated the methamphetamine was for his own personal use. Grubb's contention that other specific indicia of trafficking, such as empty baggies, cash, scales, weapons, or ledgers must be present to secure a conviction for trafficking has no legal basis. The total weight of the methamphetamine recovered from the baggies was 2.374 grams. Officer Middleton testified that the packaging was indicative of distribution and that each baggie contained multiple doses. He also testified that most addicts do not stockpile their drugs but consume them almost immediately. The amount of methamphetamine and the way it was packaged and hidden in the vehicle constituted evidence sufficient to sustain the conviction for trafficking.

It was not unreasonable, based on the evidence presented, for the jury to conclude that Grubb possessed the methamphetamine with the intent to sell it and the trial court did not err in denying his motion for a directed verdict on this charge.

## ii. The trial court did not commit palpable error in permitting the jurors to retain their cell phones during their deliberations

As the judge prepared to send the jury to deliberate in the guilt phase of the trial, the bailiff inquired about their cell phones. The judge asked the jurors to turn off their cell phones and asked the bailiff whether they normally collected the cell phones. The bailiff replied that they usually did. The judge again asked the members of the jury to turn their phones off, stating, "Has anybody got their phone left on? Okay, make sure your phone stays off please. We'd be retrying it." The jury members were allowed to retain their phones during their deliberations.

Defense counsel did not raise a contemporaneous objection. Grubb argues that the issue was nonetheless brought to the trial court's attention by the bailiff in time to prevent the alleged error from occurring. There was no substantive objection, however, to alert the trial court to a potential legal error. Grubb did raise the issue in his motion for judgment notwithstanding the verdict, which was too late to prevent the purported error from occurring.

Kentucky Rules of Criminal Procedure (RCr) 10.26 permits unpreserved error to be reviewed if it affected "the substantial rights" of a

defendant and resulted in "manifest injustice." To rise to the level of palpable error, there must be a "defect in the proceeding" which is "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006). "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Id.* at 3.

Grubb argues that the trial court's decision to allow the jurors to retain their cell phones was in direct contravention of the Kentucky Supreme Court's directive in *Winstead*, which states:

> [W]hen the jury retires to consider its verdict, the trial judge must direct a court official to collect and store all cell phones or other electronic communication devices until deliberations are complete. During deliberations, the court may release the cell phones or other electronic communication devices to allow appropriate communications by jurors (such as arranging for transportation, childcare, etc.) and may require such communication to be monitored by court officials.

*Winstead v. Commonwealth*, 327 S.W.3d 386, 401-02 (Ky. 2010).

In *Winstead*, the members of the jury retained their cell phones, and the trial court did not admonish them not to use their phones in deliberations. Some jurors were subsequently observed by the court security officer using their cell phones during the penalty phase deliberations. *Id.* at 401. After the defense moved for a mistrial, the trial court questioned the jury as a group. Several jurors

-10-

admitted using their phones but purely for personal and work-related calls. The

trial court denied the motion for a mistrial. The Kentucky Supreme Court held that

the trial court's handling of the matter was appropriate and concluded that the

phone calls made by unmonitored jurors did not automatically entitle the defendant

to a mistrial. *Id*. at 402. Grubb contends that while the trial court in his case did

instruct the jurors to turn off their phones, it did not specifically admonish them not

to use their phones for investigative purposes, thereby leaving open the possibility

that improper communication or investigation by the jurors occurred.

When evidence is improperly admitted, juries are presumed to heed

the admonition of the trial court to disregard it. *Matthews v. Commonwealth*, 163

S.W.3d 11, 17 (Ky. 2005) (citations omitted); *Ross v. Commonwealth*, 531 S.W.3d

471, 479 (Ky. 2017). There is absolutely no evidence or allegation that the

members of the jury in Grubb's case disregarded the trial court's admonition to

turn off their phones and improperly used their cell phones in a way that would

have affected the outcome of the trial. Grubb's arguments are purely speculative,

and he has not succeeded in showing the probability of a different result or that he

was denied due process in any way. The trial court's decision to allow the jurors to

retain their phones did not rise to the level of palpable error requiring reversal.

### iii. Officer Middleton's testimony did not result in manifest injustice

Grubb contends that he was deprived of the right to a fair trial because Officer Middleton was allowed to testify as an expert about the "ultimate issue" in the case. He concedes that the alleged error is unpreserved and requests palpable error review.

The prosecutor asked Middleton, "Based on your training and experience, what does the way this meth was packaged indicate?" Middleton replied, "It indicates trafficking to me, the way that it – all bags are consistent with the same weight and they are each individually bagged for distribution."

"[E]xpert opinion testimony is admitted when the issue upon which the evidence is offered is one of science and skill, . . . and when the subject matter is outside the common knowledge of jurors." *Stringer v. Commonwealth*, 956 S.W.2d 883, 889 (Ky. 1997) (citations omitted). "Presumably, jurors do not need assistance in the form of an expert's opinion that the defendant is guilty or not guilty." *Id*. at 889-90.

Grubb argues that Middleton violated this rule when he testified that Grubb was trafficking because the evidence of trafficking was circumstantial at best. He contrasts the facts of his case with those in *Sargent v. Commonwealth*, 813 S.W.2d 801, 802 (Ky. 1991), which held that the trial judge did not err in allowing police detectives to testify that in their expert opinion the defendants had

-12-

the drugs in their possession for sale and not personal use. Grubb contends that the expert opinion testimony was permissible in *Sargent* because the police in that case recovered over fifteen pounds of marijuana, which far exceeded the personal use amount, whereas in his case there was no other evidence associated with drug trafficking. But the grounds for allowing the police testimony in *Sargent* had nothing to do with the quantity of marijuana recovered but with the fact that the detectives' testimony about the marijuana trade was "specialized in character and outside the scope of common knowledge and experience of most jurors." *Id*. Similarly, Middleton's testimony about the way the methamphetamine was packaged was outside the scope of knowledge of most jurors.

Although Grubb also questions the authority of *Sargent* because three justices dissented from the opinion, the Kentucky Supreme Court reaffirmed the precedential value of *Sargent* in *McGuire*, *supra*. In *McGuire*, the Court directly addressed the issue before us: whether a police expert witness may opine that the evidence indicates trafficking. In *McGuire*, a police officer testified that, based on his experience, the small plastic bags found on McGuire's person were commonly used to hold drugs, that the quantity of methamphetamine found on McGuire was inconsistent with personal use, and that customarily people in possession of methamphetamine for personal use are found with only one small plastic bag and some tool for ingesting the drug, whereas McGuire was found with multiple bags

and tools for ingesting the drug.  McGuire argued that the police officer's testimony improperly invaded the province of the jury because it expressed an opinion on the ultimate issue of whether McGuire was guilty of trafficking.  As in Grubb's case, the argument was unpreserved.

The Kentucky Supreme Court concluded that the officer's testimony did not result in manifest injustice, relying on a line of cases, including *Sargent*, which have permitted expert witnesses to opine on relevant evidentiary facts which tend to make the ultimate fact of guilt more or less probable.  *McGuire*, 595 S.W.3d at 94. The Court concluded that the testimony was admissible because the witness "offered his opinion based on his experience as a patrol officer that the evidence was consistent with trafficking and not personal use, and he did not testify that he believed McGuire to be guilty or not guilty.  *Id*. at 95.  The Court observed that "[t]his type of expert opinion has been almost routinely admitted in drug cases."  *Id*. (citations omitted).

*McGuire* also relied on *Stringer*, which states that "[t]he real question should not be whether the expert has rendered an opinion as to the ultimate issue, but whether the opinion 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'  KRE 702."  *Stringer*, 956 S.W.2d at 889 (citing Kentucky Rules of Evidence (KRE 702)).

Middleton's testimony was based on his experience and training as a police officer and was precisely the type of testimony approved in *Sargent*, *McGuire*, and *Stringer* to assist the jury in understanding evidence beyond their own experience and did not result in manifest injustice.

**iv. The prosecutor's closing argument was not palpable error**

Grubb requests palpable error review of the prosecutor's closing argument, which he argues constituted misconduct. He focuses on two particular comments by the prosecutor, to the effect that Officer Middleton had no reason to lie and, in regard to Grubb's claim that the drugs were left in his car by his cousin Tammy, that the prosecutor had never met a drug dealer who loses their drugs.

> Officer Middleton has no reason to tell you otherwise than what's the truth. He doesn't have a stake one way or the other. He, like me, and everyone in the courtroom except maybe the defendant goes home at the end of the day. So he has no reason to say anything but the truth in this matter.

In addressing defense counsel's argument that the drugs belonged to Tammy Sparks, he stated,

> I have yet to meet a drug dealer, in my many years of doing this since George W. Bush was in the White House . . . who loses his or her drugs. They don't leave their sight. They don't leave them in the car and walk off.
>
> Prosecutorial misconduct is defined as
>
> a prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a

-15-

defendant or assess an unjustified punishment. Any consideration on appeal of alleged prosecutorial misconduct must center on the overall fairness of the trial. In order to justify reversal, the misconduct of the prosecutor must be so serious as to render the entire trial fundamentally unfair.

*Commonwealth v. McGorman*, 489 S.W.3d 731, 741-42 (Ky. 2016) (internal quotation marks and citations omitted).

We consider the following four factors in determining whether a prosecutor's remarks constitute flagrant misconduct:

(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

*Murphy v. Commonwealth*, 509 S.W.3d 34, 54 (Ky. 2017) (internal quotation marks and citations omitted). "A prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of a defense position." *Id*. at 50. If the alleged error is unpreserved, "the Court will reverse only where the misconduct was flagrant and was such as to render the trial fundamentally unfair." *Id*. at 49 (citation omitted).

Grubb argues that the prosecutor improperly bolstered Officer Middleton's credibility by equating him with the prosecutor, rather than as a witness whose credibility had to be assessed by the jurors. He concedes that prosecutors are permitted to comment on the credibility of the evidence offered at

trial but argues that the prosecutor in his case impermissibly presented his own experience as a prosecutor as a basis on which the jury could disbelieve Grubb's testimony regarding the methamphetamine belonging to Tammy.

The comments made by the prosecutor were neither misleading nor unduly prejudicial. He compared Middleton to all the other individuals in the courtroom, with the exception of the defendant, not solely with the prosecutor.

The prosecutor's other statement about drug dealers never leaving their drugs, while based on his own experience, was also a common-sense observation about Grubb's excuse that the methamphetamine belonged to his cousin.

Neither of the prosecutor's statements were misleading or extensive and certainly did not rise to the level of palpable error.

**v. The jury instructions did not comply with *Reneer* and consequently Grubb is entitled to a new sentencing hearing**

Finally, Grubb claims that he was denied due process because the trial court failed to follow the sentencing procedure set forth in *Commonwealth v. Reneer*, 734 S.W.2d 794 (Ky. 1987), in imposing the persistent felony offender enhancement on the trafficking charge. Under *Reneer*, a trial court is permitted to combine the penalty phase of the trial with the persistent felony offender phase of the trial, but the penalty on the underlying charge must be determined first, before

-17-

the determination of guilt on the PFO charge and the imposition of the enhanced

sentence:

> If the accused is also charged as a persistent felony
> offender, the penalty phase and a persistent felony
> offender phase can be combined because the same
> evidence that is pertinent toward fixing the penalty is also
> pertinent for consideration in the enhancement of
> sentence, and the jury in the combined bifurcated hearing
> could be instructed to (1) fix a penalty on the basic
> charge in the indictment; (2) determine then whether the
> defendant is guilty as a persistent felony offender, and if
> so; (3) fix the enhanced penalty as a persistent felony
> offender.

*Id.* at 797-98.

In Grubb's case, the first step of fixing a penalty on the trafficking

charge was omitted. The alleged error was preserved by objection and by the

tendering of jury instructions by the defense. The tendered instructions complied

with *Reneer* and would have required the jury first to recommend a penalty on the

underlying offense of trafficking, then proceed to determine whether Grubb was

guilty of being a persistent felony offender in the second degree and if so,

thereafter recommend an enhanced penalty. The actual instructions, however,

combined the sentencing on the trafficking charge with the PFO charge:

> We, the jury, find the Defendant, Adam Grubb, GUILTY
> of being a Second-Degree Persistent Felony Offender and
> fix his punishment for Trafficking in a controlled

Substance in the First Degree, First Offense, Two Grams or More of Methamphetamine under Instruction No. 2 at

_____

(Not less than TEN (10) YEARS nor more than TWENTY (20) YEARS.)

The Kentucky Supreme Court has expressed its disapproval of this type of instruction. In *Owens*, for example, as in Grubb's case,

> the trial court did not instruct the jury to fix a punishment for the underlying felonies before determining Appellant's guilt as a PFO. Instead the jury found Appellant guilty of being a PFO, then set an enhanced sentence for the underlying felony convictions based on the PFO status. No sentence was fixed for the underlying offense, thus, Appellant correctly asserts that *Reneer* was not followed.

*Owens v. Commonwealth*, 329 S.W.3d 307, 319-20 (Ky. 2011).

In *Owens*, the error was not preserved, and the Court held that it did not rise to the level of palpable error, stating:

> While we continue to cite *Reneer* as the required practice for trial courts to follow for PFO sentencing, we have not yet held that the failure to do so is palpable error. *See Miller v. Commonwealth*, 283 S.W.3d 690, 704 (Ky. 2009) (holding that the failure to instruct according to *Reneer* is a procedural issue which we need not review without a contemporaneous objection). We also note that in *Montgomery v. Commonwealth*, 819 S.W.2d 713 (Ky. 1991), we stated that a jury's failure to set a penalty for the underlying offense before finding PFO status does not violate the provisions of the PFO statute. Nonetheless we strongly encourage trial courts to follow the *Reneer* procedure, and while the failure to do so here is not palpable error, such may not always be the case.

-19-

*Id*. at 520-21.

In *Anderson*, the trial court required the jury to determine the defendant's PFO status before determining his sentence for underlying charge of assault. The Kentucky Supreme Court did not fully address the error because the conviction was being reversed on other grounds, but in a footnote, it stated:

> We need not address at length Anderson's third argument, concerning the improper penalty phase instructions. However, the trial court did err by requiring the jury to determine Anderson's PFO status before determining his sentence for the assault conviction and, thus, we are compelled to reiterate our directive for trial courts to follow the procedure prescribed in *Commonwealth v. Reneer*, 734 S.W.2d 794 (Ky. 1987). *See also Owens v. Commonwealth*, 329 S.W.3d 307 (Ky. 2011).

*Anderson v. Commonwealth*, 352 S.W.3d 577, 584 n.7 (Ky. 2011).

More recently, in *Conrad*, a similar error in the instructions was discovered before the trial court accepted the verdict and discharged the jury. The jury was sent back to deliberate with a full set of instructions. *Conrad v. Commonwealth*, 534 S.W.3d 779, 783 (Ky. 2017). The Kentucky Supreme Court held that the trial court had thereby remedied any procedural error before accepting the final verdict. *Id.*

Although the Commonwealth has pointed out that the *Anderson* footnote is dicta and that *Reneer* uses the permissive "could," the directive from

the Kentucky Supreme Court in *Owens*, *Anderson*, and *Conrad* is clear that the jury must first determine the penalty for the underlying offense before proceeding to determine whether the defendant is a persistent felony offender and thereafter imposing an enhanced sentence on that basis.

The case must be remanded for a new penalty phase to be conducted in accordance with *Reneer*.

## CONCLUSION

The case is remanded solely for a new sentencing hearing to be conducted in accordance with *Reneer*. The judgment of the Knox Circuit Court is affirmed in all other respects.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Molly Mattingly
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christina L. Romano
Assistant Attorney General
Frankfort, Kentucky